[No. 73113-6. En Banc.]
Argued March 11, 2003. Decided August 28, 2003.

THE STATE OF WASHINGTON, *Respondent*, v. RUSSELL L. SMITH, *Petitioner*.

138

*Shannon B. Marsh* and *David L. Donnan* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Lee D. Yates* and *James M. Whisman, Deputies,* for respondent.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

BRIDGE, J. — Following convictions for burglary in the first degree and criminal trespass in the first degree, the trial court found Russell Smith to be a persistent offender under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570, and sentenced him to life without the possibility of parole. Smith challenges the sentencing procedures of the POAA, otherwise known as the "three strikes and you're out" law, under both the United States and the Washington State Constitutions.

The POAA is part of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW,[1] which provides that the court rather than the jury determines a defendant's sentence.[2] The POAA mandates that courts sentence "persistent offenders" to life imprisonment without the possibility of parole. RCW 9.94A.570. Under RCW 9.94A.030(29)(a)(ii), a "persistent offender" is a person who has two prior convictions for "most serious offenses" as defined by RCW 9.94A.030(25).[3] Smith asserts that this sentence violates his right to a jury trial under the sixth and fourteenth amendments to the United States Constitution and under article I, sections 21 and 22 of the Washington Constitution. We do not agree.

I

Russell Smith was charged with first degree burglary, attempted residential burglary, and intimidating a witness. The charges arose out of several incidents involving Mariann Harrison, with whom he had engaged in a romantic relationship. The first incident occurred on June 10, 1999, when Smith tried to gain entry into Harrison's fifth

---

[1] The POAA was added to the SRA after Washington voters approved Initiative 593 in November 1993. RCWA 9.94A.120 Historical and Statutory Notes at 80 (West 1998).

[2] *See* RCW 9.94A.500(1) ("Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing.").

[3] The SRA does not provide for a jury trial when prior convictions are used to increase the penalty faced by a defendant. *State v. Manussier*, 129 Wn.2d 652, 682, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997).

floor condominium by climbing down from the roof. The second incident occurred on June 13, 1999, when Smith kicked open the door to Harrison's apartment, shoving and striking her. After Smith was arrested, Harrison began receiving threatening phone calls from him, allegedly as many as 20 per day.

On August 18, 2000, a jury found Smith guilty of first degree burglary and first degree criminal trespass.[4] During the subsequent sentencing proceeding, Smith filed a motion requesting a jury trial on the issue of whether he was a persistent offender. The motion was denied. The trial court then found that Smith had four prior felony convictions (three of which are considered "most serious offenses"),[5] was therefore a persistent offender under the POAA, and imposed the mandatory sentence of life in prison without the possibility of parole. Smith appealed to Division One of the Court of Appeals, contending that the United States and Washington State Constitutions afford him the right to have a jury determine beyond a reasonable doubt whether he had been convicted of two prior most serious offenses.

In an unpublished decision, the Court of Appeals upheld the trial court's denial of a jury trial on the sentencing issue. *State v. Smith*, noted at 113 Wn. App. 1018, slip op. at 11 (2002). The court rejected Smith's federal constitutional claim, finding that the issue had already been decided in *State v. Wheeler*, 145 Wn.2d 116, 34 P.3d 799 (2001), *cert. denied*, 535 U.S. 996 (2002). *Smith*, 113 Wn. App. 1018, slip op. at 11. On Smith's state constitutional claim, the court found that the issue was controlled by this court's decision

---

[4] The jury was unable to agree on the intimidating a witness charge.

[5] To prove Smith's prior convictions, the State produced the certified charging documents, judgments, and sentences for Smith's prior convictions. A fingerprint examiner took Smith's fingerprints and compared them to those on the judgments and sentences. The fingerprint examiner testified that she had no doubt that the fingerprints taken from Smith in court matched those on the judgments and sentences for the prior convictions. Report of Proceedings (July 20, 2001) at 10-11. In addition, the State produced certified records kept by the Washington State Patrol, which contained fingerprints that the examiner determined matched those she had taken from Smith. *Id.* at 16-17. The fingerprint examiner also matched Smith's courtroom prints with those taken by the California penitentiary in which Smith had been incarcerated for bank robbery. *Id.* at 17-18.

in *State v. Manussier*, 129 Wn.2d 652, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997). *Id.* Although the *Manussier* majority did not directly address the issue, the Court of Appeals found that the majority was presumed to have rejected the argument because it was substantially the same as the one articulated in the *Manussier* dissent. *Id.*

Smith sought this court's review, which we granted. We now affirm the Court of Appeals.

## II

### Federal Constitutional Claim

Smith asserts that the sixth and fourteenth amendments to the United States Constitution dictate that a defendant is entitled to notice, a jury determination, and proof beyond a reasonable doubt of persistent offender status. Because the State did not prove his persistent offender status to a jury, he contends that the trial court was precluded from imposing a sentence beyond that authorized for the underlying crimes. However, the United States Supreme Court has never held that recidivism must be pleaded and proved to a jury beyond a reasonable doubt. Additionally, this court recently held that prior offenses need not be proved to a jury under the federal constitution. *Wheeler*, 145 Wn.2d at 124. Nonetheless, Smith argues that *Wheeler* must be reexamined in light of the United States Supreme Court's most recent decision on this issue, *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

In *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), the Supreme Court held that prior convictions are sentence enhancements rather than elements of a crime, and therefore need not be proved beyond a reasonable doubt to a jury. Despite the fact that the Supreme Court has never explicitly overruled *Almendarez-Torres*, Smith argues that the case is no longer good law. He points out that the holding of *Almendarez-Torres* was called into question by the Court in

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which held that "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490 (emphasis added). But though the *Apprendi* Court commented that "it is arguable that *Almendarez-Torres* was incorrectly decided," it declined to overrule its previous decision. *Id*. at 489.

In *Wheeler*, this court was charged with deciding whether, in light of *Apprendi*, the United States Constitution requires prior convictions to be submitted to a jury in persistent offender cases. 145 Wn.2d at 117. This court declined to extend the holding of *Apprendi* to sentence enhancements based on the fact of prior convictions, stating: "No court has yet extended *Apprendi* to hold that sentence enhancements based on the fact of a prior conviction are unconstitutional." *Id*. at 123. Although the *Wheeler* court acknowledged that the issue was uncertain under the United States Supreme Court's recent decisions, it declined to address the issue until clarified by that Court. *Id*.

Recently, in *Ring v. Arizona*, the United States Supreme Court held that when aggravating factors are used to determine whether a defendant will receive the death penalty, those factors must be found by a jury. 536 U.S. at 609. Although the Court did not explicitly address the issue of prior convictions, it did not specifically exclude them from matters that must be decided by the jury, stating: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Id*. at 602. Although Smith argues that *Ring* clarified that defendants are entitled to a jury trial for determination of *any* facts that increase their maximum punishment, the *Ring* Court did not specifically overrule *Almendarez-Torres* or address the issue of prior convictions.

In *Ring*, the sentencing factor at issue was the existence of aggravating and mitigating circumstances, whereas here

the sentencing factor is prior convictions. Earlier, in *State v. Thorne*, 129 Wn.2d 736, 783, 921 P.2d 514 (1996), this court found that prior convictions are not the type of fact for which a jury trial would provide additional safeguards for the defendant.[6] As the *Thorne* court noted: "A certified copy of a judgment and sentence is highly reliable evidence." *Id. See also United States v. McGatha*, 891 F.2d 1520, 1526 (11th Cir.) ("Prior convictions are highly verifiable matters of public record . . . ."), *cert. denied*, 495 U.S. 938 (1990). In contrast, aggravating and mitigating circumstances and the weight that each should be accorded are matters of opinion about which reasonable minds could differ.[7] Thus, for aggravating and mitigating factors, it seems appropriate to require, as does *Ring*, the additional process of a jury trial. It does not follow, however, that such process is also required to determine the fact of prior convictions.

■ ■ In *Wheeler* we followed *Almendarez-Torres*, wherein the United States Supreme Court expressly held that prior convictions need not be proved to a jury. Because the Court has not specifically held otherwise since then, we hold that the federal constitution does not require that prior convictions be proved to a jury beyond a reasonable doubt.

## III

### State Constitutional Claim

In addition to his federal constitutional claim, Smith argues that article I, section 21 of the Washington Consti-

---

[6] The issue before the *Thorne* court was whether the defendant had a due process right to a jury trial at sentencing rather than a Sixth Amendment right. 129 Wn.2d at 776.

[7] For example, the Arizona statute in *Ring* required the consideration of such aggravating factors as whether the defendant knowingly caused a grave risk of death to people other than the victim, whether the defendant committed the offense in exchange for something of pecuniary value, and whether the defendant committed the offense in " 'an especially heinous, cruel or depraved manner.' " 536 U.S. at 592 n.1 (quoting ARIZ. REV. STAT. ANN. § 13-703(G) (West Supp. 2001)). Because these factors require an assessment about the defendant's state of mind, motivation, and level of cruelty, they are appropriate facts for the jury to determine.

tution mandates that a jury determine a defendant's persistent offender status. First, Smith argues that prior Washington case law supports his argument. He also contends that based on an analysis of the factors laid out in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986), the Washington Constitution provides greater protection of the jury trial right than does the federal constitution.

## Prior Washington Cases

### *Pre-SRA Case Law*

Smith argues that pre-SRA cases holding that jury trials are required on the issue of prior convictions under Washington's former habitual criminal statute should also apply to the POAA. Smith's argument is based primarily on *State v. Furth*, 5 Wn.2d 1, 104 P.2d 925 (1940), which was decided before the SRA was enacted. In *Furth*, this court was asked to decide whether a jury trial was required in habitual offender proceedings under a 1909 statute. Although jury trials were required by the 1903 version of the statute, the 1909 version contained no such express provision. *Id.* at 3-4. Despite the change in the statutory requirements, Washington courts continued to provide jury trials in habitual offender proceedings. *Manussier*, 129 Wn.2d at 690 (Madsen, J., dissenting). Examining cases from other states, the *Furth* court found that states with habitual offender statutes required the fact of prior convictions to be proved to the jury. *Furth*, 5 Wn.2d at 11-18. The court concluded that based on the weight of authority, prior convictions must be proved to a jury. *Id.* at 10. This conclusion was reasonable given the widespread statutory practice in other states and given that Washington courts had continued to provide juries, despite the lack of any such requirement in the current statute.

Although the *Furth* court could have upheld the existing practice based on statutory interpretation, the court went one step further, holding that jury trials were constitution-

ally required. The court concluded that the fact that a jury trial right was included in the 1903 habitual criminal statute did not indicate that a new right was being provided by statute; rather, the inclusion of the right "was merely declaratory of the right the defendant had" under the constitution. *Id.* at 19. Therefore, when the right was not included in the 1909 statute, no right was taken away. Finding that a jury trial was constitutionally required, the *Furth* court stated:

> Under [article I, section 21] of our constitution, the courts cannot trench on the province of the jury upon questions of fact. It is the function of the jury—not the court—to settle disputed issues of fact. . . . On a charge of a second or subsequent offense, the question of a prior conviction is an issue of fact to be determined by the jury.

*Id.* at 19.

■ However, the *Furth* court failed to support this proposition with any historical evidence indicating that the drafters meant to include a right to a jury trial on the issue of prior offenses in the constitution. *See id.* The court's analysis rested solely on its definition of the word "inviolate" and on its unsupported assertion that only juries decide disputed issues of fact. *See id.* at 18-19. As discussed below, the textual language is only one of the factors that this court now uses to determine whether the state constitution grants broader protection of a right than the federal constitution. *See infra* p. 149. Furthermore, there is no basis for the assertion that only juries determine questions of fact. Although the general rule is that juries decide questions of fact, it is subject to numerous exceptions. 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE CIVIL § 211, at 419-21 (5th ed. 1996). Judges, for example, decide factual issues on motions and in regard to the admissibility of evidence. *Id.* at n.3. Judges fre-

quently must decide issues of fact as they relate to sentencing under the SRA.[8]

The State contends that the *Furth* court's comments regarding a constitutional right to jury trial are not only flawed but are dicta. We agree. It may have been reasonable for the court to conclude that juries were required under the 1909 habitual offender statute given the previous version of the law, the practice of continuing to provide juries in such proceedings, and the fact that juries were required under various contemporary state statutes. But though the *Furth* court's holding rests on a reasonably sound *statutory* basis, its conclusion that the statutory right was based on a *constitutional* guaranty is not sound, as a historical analysis of article I, section 21 will demonstrate.

### Post-SRA Case Law

The SRA, which became effective in 1984, establishes presumptive sentencing ranges for most criminal offenses. Ch. 9.94A RCW. Under the SRA, a defendant's prior convictions contribute to determining the presumptive sentencing range. RCW 9.94A.525. Jury trials for the sentencing phase are not required, as RCW 9.94A.500(1) states: "Before imposing a sentence upon a defendant, *the court shall conduct a sentencing hearing.*" (Emphasis added.)

In *State v. Ammons*, 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796 (1986), this court upheld the constitutionality of the SRA's procedural provisions. The defendants asserted that the existence of prior convictions must be proved beyond a reasonable doubt and that the State must prove that the prior convictions are constitutionally valid. *Id.* at 185-87. Finding the sentencing court's determination of prior convictions under the SRA to be analogous to the former parole board's revocation proceedings, this court

---

[8] For example, under the SRA, the judge must conduct a sentencing hearing during which the judge considers such factual issues as the defendant's criminal history, whether the defendant is mentally ill, and the risk that the defendant will commit other offenses in the future. RCW 9.94A.500(1). When imposing an exceptional sentence, a judge must set forth written findings of fact to support his or her decision. RCW 9.94A.535.

held that due process was satisfied by the procedures set forth in the SRA. *Id.* at 186.

## *POAA Case Law*

In 1993, Washington voters approved Initiative 593, known as the "Three Strikes" law or the POAA. The POAA was added to the SRA at RCW 9.94A.570.

In *Manussier*, this court held that Initiative 593 did not violate state and federal due process standards by not requiring a jury trial and proof beyond a reasonable doubt for sentencing. 129 Wn.2d at 685. The majority based its holding on the due process rights protected by article I, section 3, but did not address the jury trial right under article I, section 21. However, the *Manussier* dissent discussed the state jury trial right at length, relying on much the same reasoning as that adopted by Smith here. *See id.* at 685-97 (Madsen, J., dissenting). The Court of Appeals below concluded that "because Justice Madsen's dissent analyzed the issue and the *Manussier* majority did not adopt her analysis, we presume they rejected it. Therefore *Manussier* is controlling." *Smith*, slip op. at 11.

The *Manussier* court compared Initiative 593 to the former habitual criminal statute, which mandated a life sentence for any defendant convicted of three felonies. 129 Wn.2d at 681. The former habitual criminal statute did not establish a specific procedural process, but this court had held that the existence of prior convictions was a question of fact to be resolved by a jury. *Id.* (citing *Furth*, 5 Wn.2d at 18-19). The *Manussier* court, however, found that Initiative 593 was different from the former habitual criminal statute because it was part of the SRA, which specifically provided that prior convictions need only be proved to the court by a preponderance of the evidence. *Id.* at 682.

█ Smith argues that *Manussier* does not control the decision in this case because the parties in *Manussier* did not present arguments based on article I, section 21 or 22. We agree that *Manussier* is not controlling. A majority

opinion does not necessarily reject the reasoning set forth in the dissent; rather, the majority may base its holding on a completely separate analysis and may not even consider those arguments addressed by the dissent. Although *Manussier* is not controlling on the issue before us, we nevertheless reach the same result as the Court of Appeals based on the historical evidence surrounding the jury trial right in Washington as discussed below.

In *Thorne*, another post-POAA case, the defendant argued that because the POAA was so similar to the habitual criminal statute, the procedural protections established by case law for the habitual criminal statute must also apply under the POAA. 129 Wn.2d at 750. This court concluded that the procedures for the habitual criminal statute did not apply to the POAA since it was part of the SRA, which has its own procedural requirements. *Id.* at 778. The court stated: "Unless these statutory procedures violate constitutional guarantees, they must be applied to the new law." *Id.* Proceeding to determine that the protections provided under the SRA were constitutionally sufficient, the court noted:

> [W]e fail to see how the presence of a jury would be necessary. Prior convictions are proved by certified copies of the judgment and sentence, and identity (if contested) can be proved by fingerprints. The sentencing judge can make those determinations. While technically questions of fact, they are not the kinds of facts for which a jury trial would add to the safeguards available to a defendant.

*Id.* at 783 (citation omitted). The *Thorne* majority relied primarily on federal law and did not discuss article I, section 21. The dissent argued that the state constitution does guarantee greater protection than the federal constitution in the context of sentence enhancements. *Id.* at 785 (Madsen, J., dissenting).

■ In *Wheeler*, this court reconsidered the procedural due process issues raised by *Thorne* and *Manussier* in light of the United States Supreme Court's decision in *Apprendi*. As discussed above, the *Wheeler* court held that the POAA

was not procedurally defective under the due process clause of the federal constitution. 145 Wn.2d at 123-24. Because the petitioners failed to bring a state constitutional claim, the *Wheeler* court declined to address the issue. *Id.* at 124. However, the court left the door open for such arguments, stating: "Should this Court revisit the issue, the state constitution provides the most fruitful approach." *Id.* In contrast to the *Wheeler* petitioners, Smith's briefs provided the *Gunwall* analysis that we require when considering whether the Washington Constitution provides greater protection than the federal constitution.

## The *Gunwall* Analysis

██ Smith asserts that there is broader protection of a defendant's right to trial by jury under the Washington State Constitution than under the federal constitution. The United States Supreme Court has held that state courts may find that provisions of their state constitutions provide greater protection than is afforded under the federal constitution in some circumstances. *Oregon v. Hass*, 420 U.S. 714, 719, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975). In assessing whether the Washington Constitution affords greater protection of a right than the federal constitution, this court's decision in *Gunwall* requires the consideration of six factors: (1) textual language, (2) differences between the texts, (3) constitutional history, (4) preexisting state law, (5) structural differences, and (6) matters of particular state or local concern. 106 Wn.2d at 58. We will depart from federal constitutional precedent only if these six criteria indicate a basis for independent state protection. *Id.* at 61. Even if these factors point to greater protection under the Washington Constitution, this court must still determine the extent of that protection.

### Factor One: Textual Language

Smith argues that the language of article I, section 21 indicates that Washington's constitution provides greater

protection of the right to jury trial than does the federal constitution. Article I, section 21 provides that the right to jury trial shall remain "inviolate." *Webster's* defines "inviolate" as "free from change or blemish : PURE, UNBROKEN . . . free from assault or trespass : UNTOUCHED, INTACT." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1190 (1993). As this court stated in *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 656, 771 P.2d 711, 780 P.2d 260 (1989), "[t]he term 'inviolate' connotes deserving of the highest protection." Smith maintains that the use of the word "inviolate" indicates that a jury trial must be provided for persistent offender sentencing proceedings.

■ Although the use of the word "inviolate" in article I, section 21 indicates a strong protection of the jury trial right, by the plain language of article I, section 22, that right applies only to trials for *offenses*, not to sentencing proceedings. Article I, section 22 provides: "In criminal prosecutions the accused shall have the right to . . . have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." This section clearly refers to crimes that occur in particular counties, whereas the determination of a defendant's recidivist status is not an "offense" and does not necessarily occur within a particular county. Thus, although the right to a jury trial may be "inviolate" under article I, section 21, it is only so for trials on "offenses" as stated in article I, section 22.

This court has previously held that the use of the word "inviolate" in article I, section 21 does not mean that "a trial by jury is imperative and compulsory in every instance, regardless of whether or not the accused by his plea has raised *an issue of fact* triable by a jury." *Brandon v. Webb*, 23 Wn.2d 155, 159, 160 P.2d 529 (1945). The *Brandon* court found that a jury determination of the degree of murder and the punishment were not constitutionally required when the defendant pleaded guilty to second degree murder and was sentenced accordingly by the trial court. *Id.* at 161. The purpose of article I, section 21 was to preserve inviolate the

right to a trial by jury as it existed at the time of the adoption of the constitution rather than to make jury determinations mandatory in all phases of all criminal cases. *Id.* at 159.

### Factor Two: Differences in the Texts

Smith notes that whereas the federal constitution mentions the right to trial by jury only in the Sixth Amendment, the Washington Constitution contains two provisions regarding this right. Article I, section 21 states: "The right of trial by jury shall remain inviolate . . . ." In addition, article I, section 22 provides that "[i]n criminal prosecutions the accused shall have the right to . . . have a speedy public trial by an impartial jury." Although the Sixth Amendment and article I, section 22 are comparable, this court has previously found that article I, section 21 has no federal equivalent. *State v. Schaaf*, 109 Wn.2d 1, 13-14, 743 P.2d 240 (1987). Because the right is contained in two provisions rather than one, Smith concludes that the Washington Constitution provides more extensive protection than the federal constitution.

We agree that the fact that the Washington Constitution mentions the right to a jury trial in two provisions instead of one indicates the general importance of the right under our state constitution. However, this fact fails to provide guidance as to the scope of that right. As we discuss under factors three and four, the extent of the right must be determined from the law and practice that existed in Washington at the time of our constitution's adoption in 1889. *City of Pasco v. Mace*, 98 Wn.2d 87, 96, 653 P.2d 618 (1982).

### Factor Five: Differences in Structure

The federal constitution is a grant of limited powers whereas state constitutions limit the otherwise plenary power of the states. Smith argues that because article I, section 21 is a limit on state power, the jury trial guaranty

should be rigorously enforced. However, this presupposes that there is such a guaranty arising from article I, section 21 for determinations of prior convictions. Simply noting the difference in structure between the federal and state constitutions does not address the scope of the right that is guaranteed under either document. Furthermore, adopting Smith's reasoning on this factor would always lead to an independent state analysis because all state constitutional provisions limit the power of state government. This court has previously held that this factor will always favor an independent analysis. *State v. Russell*, 125 Wn.2d 24, 61, 882 P.2d 747 (1994). Thus, it appears that although there is a difference in structure between the federal and state constitutions, it does not help to resolve the issue in this case.

## *Factor Six: Particular State Interest or Local Concern*

 Smith maintains that the manner of conducting criminal trials in state courts is of particular local concern, and therefore does not require adherence to a national standard. The State, on the other hand, argues that the right to a jury trial is a general concern of litigants nationwide, not just those in Washington. In *Schaaf*, this court found that providing jury trials for juveniles was a matter of local concern rather than an issue requiring national uniformity. 109 Wn.2d at 16. *See also McKeiver v. Pennsylvania*, 403 U.S. 528, 547, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971). Likewise, it would seem that providing jury trials for adult defendants is a matter of particular local concern.

## *Factors Three and Four: State Constitutional and Common Law History and Preexisting State Law*

The previous four factors indicate some support for interpreting Washington's right to a jury trial more broadly than the federal right. In fact, the State concedes that Washington's right to a jury trial has sometimes been

interpreted more broadly. *See Mace*, 98 Wn.2d at 99; *see also State v. Hobble*, 126 Wn.2d 283, 298, 892 P.2d 85 (1995) ("The right to trial by jury under the Washington State Constitution is not coextensive with the federal right."). Even if the right to jury trial is broader under our state constitution, we still must determine the nature and extent of the right.

▆ Both Smith and the State agree that in order to determine the scope of the jury trial right under the Washington Constitution, it must be analyzed in light of the Washington law that existed at the time of the adoption of our constitution. In *Mace*, this court stated: "In construing [article I,] section 21, this court has said that it preserves the right as it existed at common law in the territory at the time of its adoption." 98 Wn.2d at 96. The *Mace* court held that petty offenses must be tried to a jury under the Washington Constitution even though a jury was not re-quired for such offenses under federal law. *Id.* at 99. The court reached this decision by examining the history of misdemeanor trials in Washington prior to 1889, finding that a jury trial was available for all offenses in Washington at that time, including misdemeanors. *Id.* at 97-98. Simi-larly, we must examine the jury's role in sentencing in this state in 1889.

Smith argues that Washington courts have long recog-nized a common law right to trial by jury on the issue of prior convictions. As support for his argument, he notes that Washington's Code of 1881 provided that the common law of England would be the rule of law in Washington Territory so long as it did not conflict with Washington territorial laws or the laws of the United States. *See* CODE OF 1881, ch. 1, § 1. Smith asserts that under English common law, juries determined prior convictions. *See* 1 JOEL PRENTISS BISHOP, COMMENTARIES ON THE CRIMINAL LAW §§ 963-64 (7th ed. 1882).[9] Because English common law provided for jury

---

[9] The rule discussed in the Bishop treatise appears to be established by an 1851 English statute. *Black's Law Dictionary* defines "common law" as "those prin-ciples, usage and rules of action applicable to government and security of persons

trials for prior convictions, Smith contends that this was also the law by default in Washington Territory under the Code of 1881.

 However, Washington specifically abolished the jury's role in sentencing by statute before the state constitution was adopted in 1889. Section 239 of the Laws of 1866 provided: "When the defendant is found guilty, the court, and not the jury, shall fix the amount of fine and the punishment to be inflicted." Laws of 1866, § 239, *in* Statutes of the Territory of Washington 102 (1866); *see also* David Boerner, Sentencing in Washington: A Legal Analysis of the Sentencing Reform Act of 1981 § 2.2(a) (1985) (stating that judges had discretion in sentencing during territorial days). Because Washington territorial law specifically provided otherwise, the common law default rule did not apply.

 It was not until 1903, well after the Washington Constitution was adopted, that the legislature enacted Washington's first habitual offender statute, which provided for increased penalties upon proof that a defendant had been previously convicted of felonies. Laws of 1903, ch. 86 (1 Rem. & Ball. Code §§ 2177-78 (1910)). This statute provided for jury trials at sentencing. *Id.* Because this law was not enacted until after the constitution was adopted, it could not have had any effect on the drafters' intent when they wrote article I, sections 21 and 22.[10]

---

and property which do not rest for their authority upon any express and positive declaration of the will of the legislature." Black's Law Dictionary 276 (6th ed. 1990). The "common law" also includes "all the statutory and case law background of England and the American colonies before the American revolution." *Id.* Thus, it appears that the "common law" includes some statutory law, but only that law already adopted before the American Revolution. It is therefore uncertain that there was a common law right to a jury at sentencing in England at the time of the adoption of the Washington Constitution, as the 1851 law referred to in the Bishop treatise was a statute adopted after the revolution. In fact, other authorities note that "[t]he power to sentence resided in the judge at common law." Edward A. Linden, Note, *Jury Sentencing in Virginia*, 53 Va. L. Rev. 968, 970 (1967). *See also* Ronald F. Wright, Book Review, *Rules for Sentencing Revolutions*, 108 Yale L.J. 1355, 1374 (1999) (noting that the English common law practice was for judges rather than juries to impose sentences).

[10] Part of Smith's argument is based on the fact that many other states recognized the right to a jury trial for prior convictions that aggravate the sentence as a matter of common law or statute. However, as the relevant factor

 Smith also argues that the Code of 1881 limited a court's right to impose punishment to that which was authorized by the jury's verdict. While true that the Code provides that defendants must be convicted of their *offenses* by a jury,[11] this court has previously held that recidivism is a sentencing factor rather than a separate *offense*. *Thorne*, 129 Wn.2d at 780. In *Thorne*, this court specifically found that the POAA is a sentencing law. *Id*. at 778. Finding that persistent offender status was not an element of an offense, this court stated: "A defendant's criminal history is a factor which has traditionally been considered by sentencing courts, and the legislature is well within its discretion in defining past crimes as sentencing factors rather than elements of a charge." *Id*. at 780. Thus, although the Code of 1881 contemplated that offenses must be tried to a jury, recidivism need not be tried to a jury because it is not an element of an offense.

 Finally, Smith asserts that the Code of 1881 provided that only juries are to determine issues of fact, as the Code states: "Issues of fact joined upon an indictment shall be tried by a jury of twelve persons . . . ." CODE OF 1881, ch. LXXXVII, § 1078. However, this provision merely indicates that juries shall decide issues of fact in the indictment, not issues of fact in relation to sentencing. In *City of Seattle v. Gardner*, 54 Wn.2d 112, 114, 338 P.2d 125 (1959), the defendants' prior convictions were presented to the judge for consideration in determining sentencing. Finding that a judge could determine this type of fact, the *Gardner* court stated: "It would seem to need no citation of authority to support the proposition that a court, in passing sentence upon a convicted person, may take into consideration other offenses committed by the same person." *Id*.

here is Washington law in 1889, the laws of other states provide little support for his argument. Washington courts adopt the common law only to the extent that it is consistent with Washington statutory law. RCW 9A.04.060; CODE OF 1881, ch. 1, § 1. Even if other states recognized a common law right, Washington had specifically provided otherwise by abolishing the jury's role in sentencing in section 239 of the Laws of 1866.

[11] CODE OF 1881, ch. LXVI, § 767.

, Although the *Gunwall* analysis indicates that the right to a jury trial may be broader under article I, sections 21 and 22 than under the federal constitution, Smith has failed to provide sufficient evidence that this broader protection includes the right to a jury trial on the fact of prior convictions at sentencing. Historical evidence clearly demonstrates that in Washington in 1889, juries had no authority over sentencing, thus making it unlikely that the drafters of the state constitution meant to constitutionally protect such a right in article I, sections 21 and 22.

## IV

We hold that neither the sixth amendment to the United States Constitution nor article I, sections 21 and 22 of the Washington Constitution includes the right to a jury determination of prior convictions at sentencing. Although the *Gunwall* analysis indicates that the Washington Constitution generally offers broader protection of the jury trial right than does the federal constitution, a historical analysis of Washington law at the time of the adoption of our state constitution indicates that juries did not then determine sentences. We therefore conclude that there is no constitutional requirement that defendants be given a jury trial on the fact of their prior convictions. The decision of the Court of Appeals is affirmed.

ALEXANDER, C.J., and IRELAND, OWENS, and FAIRHURST, JJ., concur.

CHAMBERS, J. (dissenting) — I respectfully dissent for the reasons ably articulated by Justice Madsen in *State v. Manussier*, 129 Wn.2d 652, 685, 921 P.2d 473 (1996) (Madsen, J., dissenting). I will not attempt to duplicate Justice Madsen's scholarly *Manussier* dissent.

The majority properly notes that the United States Constitution does not dictate the meaning of the constitutional provisions laid down by our own founding fathers.

Instead, our national constitution lays a floor below which we may not sink. *See generally* Robert F. Utter, *Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights*, 7 U. PUGET SOUND L. REV. 491 (1984). The Washington Constitution sets a high threshold before a sentence of life without parole may be imposed based on the fact of prior convictions.

Our own founding fathers, having more than a century of experience with the national constitution behind them, were often more protective of individual procedural rights than their earlier, national, counterparts. *See City of Pasco v. Mace*, 98 Wn.2d 87, 99, 653 P.2d 618 (1982) ("the right to trial by jury . . . was more extensive than that which was protected by the federal constitution when it was adopted . . . ."); *see generally* Utter, *supra*; *see also* Charles W. Johnson, *Survey of Washington Search and Seizure Law: 1998 Update*, 22 SEATTLE U. L. REV. 337 (1998); *accord State v. Hobble*, 126 Wn.2d 283, 298, 892 P.2d 85 (1995). Accordingly, our constitution provides that the right to a jury as it existed in 1889 *is to remain inviolate*. CONST. art. I, § 21. This is a substantive requirement of state constitutional law, and does not turn on procedures later grafted onto our criminal process. *See, e.g., State v. Furth*, 5 Wn.2d 1, 18-19, 104 P.2d 925 (1940).

The proper question is not whether a judge or a jury would have determined a criminal sentence in 1889. The proper question is whether a judge or a jury would have determined the fact of prior convictions in 1889. "In construing section 21, this court has said that it preserves the right as it existed at common law in the territory at the time of its adoption." *Mace*, 98 Wn.2d at 96 (citing *State ex rel. Mullen v. Doherty*, 16 Wash. 382, 47 P. 958 (1897)); *see also Manussier*, 129 Wn.2d at 687-91 (Madsen, J., dissenting) (reviewing history of habitual criminal statutes).

I give far less weight to the procedural bifurcation of the guilt and penalty stages of trial than the State would have us give. That sidesteps the underlying question; whether,

when the fact of prior convictions elevates a sentence to life in prison, the State must charge and prove the fact of the prior convictions.

We have answered this question already. "On a charge of being an habitual criminal, is the question of defendant's prior conviction an issue of fact to be determined by the jury? The weight of authority answers that question, which is one of first impression in this state, in the affirmative." *Furth*, 5 Wn.2d at 10. Further:

> Where previous convictions are charged in an information for the purpose of enhancing the punishment of the defendant, such convictions must be proved beyond a reasonable doubt, since the fact of the prior convictions is to be taken as an essential element of the offense charged, at least to the extent of aggravating it and authorizing an increased punishment.

*Id.* at 11 (citing *People v. Reese*, 258 N.Y. 89, 179 N.E. 305 (1932)). That was the holding of the case. It answered the underlying question presented, then and now. It should be our holding today. *Accord Manussier*, 129 Wn.2d at 691 (Madsen, J., dissenting); *see also State v. Holsworth*, 93 Wn.2d 148, 159, 607 P.2d 845 (1980).

I readily concede that in our constitutional jurisprudence, sentencing is generally the province of the trial judge within the guidelines laid down by the legislature and the requirements of the state and federal constitutions. I agree that under our constitutions, many factual questions relevant only to the sentence need not be decided by a jury.

I also agree that, pragmatically, the jury's role in this fact finding will be limited. *See, e.g., State v. Le Pitre*, 54 Wash. 166, 169-70, 103 P. 27 (1909). Essentially, the jury will hear an expert testify that the fingerprints of the offender match the fingerprints on prior judgments and sentences. In only the rarest cases will there be a meaningful dispute.

But this particular fact is often the predicate fact that must be found before a life sentence without the possibility of parole may be imposed. The task of answering this question was vested in the able hands of the Washington

jury. Efficiency must give way to constitutional command. Accordingly, I respectfully dissent.

JOHNSON, MADSEN, and SANDERS, JJ., concur with CHAMBERS, J.

Reconsideration denied October 22, 2003.