# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of<br><br>STEVEN CRAIG CEARLEY,<br><br><br>Petitioner. | No. 44282-5-II<br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — A jury found Steven Cearley guilty of five counts of first degree child rape and one count of first degree child molestation, and further found the aggravating factor that Cearley had used his position of trust to commit the offenses. The court imposed an exceptional sentence based on both the position of trust sentencing aggravator and Cearley's high offender score. In this personal restraint petition, Cearley argues that (1) a victim advocate coached the victim during her testimony; (2) sealed jury questionnaires and sidebar conferences violated his right to a public trial; (3) sidebar conferences violated his right to be present; (4) the trial court erred by failing to conduct a hearing when it learned that victim advocates spoke to jurors; (5) two jurors slept during trial; (6) the trial court wrongly instructed the jury on the position of trust aggravator; (7) the trial court imposed a mandatory minimum sentence based on Cearley's high offender score, which was not found by the jury; (8) Cearley received the ineffective assistance of counsel for several reasons; and (9) the convictions should be overturned due to cumulative error. Because Cearley fails to establish either constitutional error that resulted in actual and substantial prejudice or nonconstitutional error that resulted in a complete miscarriage of justice, we deny his petition.

FACTS

ADM[1] lived with her aunt and Cearley. Cearley molested and raped ADM several times over a two-year period when ADM was approximately seven to nine years old.

ADM told some of her friends that she was experiencing sexual abuse. At first she did not say who abused her, but she eventually disclosed that Cearley was the abuser. ADM's school principal, a Child Protective Services agent, and Kris Camenzind, a Crisis Support Network employee, initiated an interview with ADM. At first, ADM denied that Cearley abused her. But as the interview progressed, ADM disclosed that Cearley had sexually abused her and had threatened her not to tell anyone.

During an ensuing search of Cearley's residence, police found physical evidence that Cearley sexually abused ADM, namely Cearley's semen inside the crotch of ADM's jeans. In subsequent interviews, ADM continued to state that Cearley sexually abused her. She described several instances of such abuse.

The State charged Cearley with six counts of first degree child rape[2] and one count of first degree child molestation.[3] For each count of child rape, the State added the aggravating factor that Cearley used a position of trust to accomplish the crime.[4] The case proceeded to a jury trial.

---

[1] For purposes of confidentiality, we use the minor victim's initials.

[2] RCW 9A.44.073.

[3] RCW 9A.44.083.

[4] RCW 9.94A.535(3)(n).

The parties used a jury questionnaire as part of jury selection. The questionnaire was labeled "confidential" and it specified that it would "be part of the sealed Court file and will not be available for inspection publicly or privately" absent a court order to unseal it. Personal Restraint Petition (PRP) (Appendix B). During trial, the trial court conducted multiple sidebar conferences.

The trial court allowed several victim advocates to attend trial. The primary victim advocate was Camenzind, the employee from the Crisis Support Network who had attended ADM's initial interview. The trial court allowed Camenzind to sit in the front row, but admonished the prosecutor to warn Camenzind not to use facial gestures to influence ADM's testimony. Cearley alleges that, despite this admonition, ADM "kept her eyes right on [Camenzind] the whole time" during her testimony, and that ADM appeared to react to the victim advocate's behavior "[a] couple of times." PRP (Appendix C). He alleges that when ADM hesitated, she "would look at Ms. Camenzind who would nod at her. When she nodded, [ADM] would continue with her answer. When [Camenzind] looked away, [ADM] would stop or change the direction of her answer." PRP (Appendix C). Cearley does not say during which portions of ADM's testimony this behavior occurred.

Cearley also alleges that ADM held a toy in the court hallway "surrounded by her advocates" during a break in her testimony. PRP (Appendix C). He alleges that many advocates were "surrounding [ADM] and making her feel better outside of the courtroom." PRP (Appendix C). Cearley suggests that allowing ADM to hold a toy and talking to her during breaks were "subtle methods of attempting to influence her testimony." PRP at 10. He speculates that Camenzind may have "spoke[n] to the witness during her break about her

3

testimony" or assured her that she "was doing 'good' or that [the victim advocates] were 'proud' of her." PRP at 10.

Cearley also alleges that he saw two jurors talking with a victim advocate during a break in the trial and that he photographed this improper contact on his phone. Without explaining what he told the judge about this contact, Cearley alleges that the judge "got upset and told [Cearley] to delete [the photo] during the break." PRP (Appendix C). Cearley states that he alerted trial counsel to the issue, but that trial counsel declined to act. Cearley's trial counsel recalls that "there was an issue at some point and Mr. Cearley was told to delete a photograph he had taken outside of the court room." PRP (Addendum to Appendix). He states that he does not "recall being shown the photograph and [he has] a vague memory of this issue." PRP (Addendum to Appendix).

Cearley further claims that his trial counsel "kept his shoulder turned against" Cearley during trial and would not speak to him in front of the jury. PRP (Appendix C). When Cearley asked questions, his counsel was "very short with" him or "would not answer [his] questions." PRP (Appendix C). But Cearley acknowledges that "[d]uring breaks [his counsel] was nicer." PRP (Appendix C). Cearley asked his trial counsel about this behavior, and his trial counsel told him "not to pay any attention to how he was acting because it was just 'part of the plan.'" PRP (Appendix C). Finally, Cearley alleges that two jurors slept on a regular basis through material portions of trial. He identifies the two jurors generally by approximate age and gender, but he does not state when or for how long these jurors slept.

The trial court instructed the jury on the abuse of trust aggravating factor for first degree child rape. Jury instruction 28 read:

> A defendant uses a position of trust to facilitate a crime when the defendant gains access to the victim of the offense because of the trust relationship. In determining whether there was a position of trust, you should consider the length of the relationship between the defendant and the victim, the nature of the defendant's relationship to the victim, and the vulnerability of the victim because of age or other circumstance. There need not be a personal relationship of trust between the defendant and the victim. It is sufficient if a relationship of trust existed between the defendant and someone who entrusted the victim to the defendant's care.

PRP at 40.

The jury found Cearley guilty of five counts of child rape and one count of child molestation. The jury also found Cearley used a position of trust to facilitate the child rape convictions. Accordingly, the trial court sentenced Cearley to exceptional sentences, based both on the position of trust aggravator and on Cearley's high offender score. In imposing the exceptional sentence, the trial court entered findings of fact and conclusions of law stating that an exceptional sentence was justified based both on the high offender score under RCW 9.94A.535(2)(c), and on the position of trust aggravating factor found by the jury. The trial court also stated that both of these grounds, "taken together or considered individually, constitute sufficient cause to impose the exceptional sentence. This court would impose the same sentence if only one of the grounds . . . is valid." PRP (Appendix A).

Cearley appealed to this court, and we affirmed his convictions. This personal restraint petition timely followed. In his petition, Cearley provides detailed psychological evaluations of ADM, showing that she struggled with depression and other mental health issues around the time of the abuse. He also provides academic literature on appropriate protocols for interviewing children.

ANALYSIS

I. LEGAL PRINCIPLES

To be entitled to relief, a personal restraint petitioner must establish by a preponderance of the evidence either constitutional error that resulted in actual and substantial prejudice or nonconstitutional error that resulted in a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005); *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007). The petitioner must support his claims of error with a statement of facts on which his claim of unlawful restraint is based and the evidence available to support his factual allegations; he cannot rely solely on conclusory allegations. RAP 16.7(a)(2)(i); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988); *see also In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990).

The petitioner may support his allegations with the trial court record, affidavits, or other forms of corroboration. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). These corroborating sources must show that admissible evidence will establish the petitioner's factual allegations. *Rice*, 118 Wn.2d at 886. It is insufficient for a petitioner to rely on mere speculation, conjecture, or inadmissible hearsay. *Rice*, 118 Wn.2d at 886.

We deny a personal restraint petition if the petitioner fails to make a prima facie showing of either actual and substantial prejudice or a fundamental defect. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17-18, 296 P.3d 872 (2013). We remand for a reference hearing if the petitioner makes such a showing, but the record is not sufficient to determine the merits. *Yates*, 177 Wn.2d at 17-18. We, however, grant the petition if we are convinced that the petitioner has established

actual and substantial prejudice or a fundamental defect by a preponderance of the evidence. *Yates*, 177 Wn.2d at 17-18.

## II. WITNESS COACHING

Cearley argues that his right to a fair trial was violated when a victim advocate "'coached'" ADM during her testimony. PRP at 6. We disagree because Cearley does not establish that this allegation, even if true, resulted in actual and substantial prejudice.

Violent and sex crime victims have the right to have a victim advocate present during any interview by defense or prosecution. RCW 7.69.030(10). Child victims have a statutory right to have an advocate present in court "while the child testifies in order to provide emotional support to the child." RCW 7.69A.030(8).

Cearley alleges that Camenzind subtly influenced ADM's testimony "[a] couple of times" through facial gestures. PRP (Appendix C). Cearley also speculates, without factual support, that the victim advocate may have verbally or otherwise encouraged ADM in her testimony during breaks in the trial.

Even accepting Cearley's facts as true, his claim fails because he does not demonstrate that Camenzind's behavior deprived him of his right to a fair trial and caused him actual and substantial prejudice. To prevail on the constitutional claim that Camenzind's behavior violated Cearley's right to a fair trial, Cearley must make a prima facie showing of actual and substantial prejudice resulting from the violation of this constitutional right. *Yates*, 177 Wn.2d at 17-18. But Cearley does not say at what stage of ADM's testimony any of the alleged gestures occurred, nor does he say at what stage of trial he saw ADM talking with victim advocates during breaks in her testimony. Thus, he cannot show any prejudice because he cannot show what questions or

answers may have been altered by coaching. In addition, physical evidence supported ADM's testimony. His claim fails.

### III. PUBLIC TRIAL

Cearley argues that his right to a public trial was violated in two ways: through a sealed juror questionnaire and through several sidebar conferences. We disagree, because Cearley neither argues nor demonstrates that any court closure caused him actual and substantial prejudice.

Defendants have a constitutional right to a public trial. WASH. CONST. art. I, § 22. Unless a court first conducts a hearing under *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995), a courtroom closure constitutes structural error and requires reversal on direct appeal. *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012). But to prevail on a public trial claim, a personal restraint petitioner must show actual and substantial prejudice resulting from a violation of the public trial right. *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 122, 340 P.3d 810 (2014) (plurality opinion).

Even assuming that any courtroom closures occurred, Cearley neither argues nor demonstrates that any such closure caused him actual and substantial prejudice. Instead, he argues that these public trial violations are structural errors, requiring automatic reversal and a new trial. But our Supreme Court rejected this argument in *Coggin*, 182 Wn.2d at 122 (plurality opinion), and *In re Pers. Restraint of Speight*, 182 Wn.2d 103, 107, 340 P.3d 207 (2014) (plurality opinion). Thus, even if the juror questionnaires or sidebars violated Cearley's right to a public trial, he does not make the requisite showing of prejudice to prevail in a personal restraint petition. *Coggin*, 182 Wn.2d at 122 (plurality opinion). His claim fails.

## IV. RIGHT TO BE PRESENT

Cearley argues that his right to be present was violated during various sidebars. We disagree.

A defendant has a right to be present "'at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" *State v. Love*, 183 Wn.2d 598, 608, 354 P.3d 841 (2015) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987)). Here, Cearley does not say at what stage of trial the sidebars occurred. Thus, he does not show that any sidebars occurred when he had a right to be present—in other words, "at any stage of the criminal proceeding that is critical to its outcome." *Love*, 183 Wn.2d at 608.

Because Cearley fails to establish that he had the right to be present at the sidebars, his claim fails.

## V. COMMUNICATION WITH JURORS

Cearley argues that the trial court erred by failing to conduct a hearing when it learned that victim advocates spoke to jurors. We disagree. Assuming arguendo that the alleged improper jury contact took place and that the trial court responded as Cearley alleges it did, Cearley's claim fails because he cannot show prejudice.

In a personal restraint petition, the petitioner must show by a preponderance of the evidence that prejudice resulted from unauthorized jury communication. *Woods*, 154 Wn.2d at 414. Cearley misapprehends his burden, and urges us to provide him a hearing at which he will have the opportunity to discover whether the juror communication prejudiced him. But Cearley is entitled to a reference hearing only if he makes a prima facie showing in his petition of actual

and substantial prejudice resulting from a constitutional violation. *Yates*, 177 Wn.2d at 17-18. He does not do so. And under *Woods*, he must show prejudice by a preponderance of the evidence, which he fails to do. 154 Wn.2d at 414. He merely states that "[a] couple of the jurors . . . talked with one of the advocates" outside the courtroom. PRP (Appendix C). He does not say how long the contact lasted nor what was discussed. The advocate was not a witness. These facts are insufficient to show that this contact prejudiced Cearley's trial. Thus, he is entitled neither to relief nor to an evidentiary hearing.

## VI. SLEEPING JURORS

Cearley argues that his right to a fair trial was violated because two jurors slept through a "significant portion of the trial." PRP at 35. We disagree because Cearley fails to show actual and substantial prejudice.

Cearley's declaration alleges that two jurors slept during his trial: an "older white male in his mid 50's" who "sat in the back row in the right corner," and "a white male in his mid 40's" who "was in the front left corner." PRP (Appendix C). Cearley does not say during what parts of trial these jurors slept, nor for how long.

Cearley argues that the two jurors' sleeping deprived him of his Sixth Amendment right to a trial by a fair and impartial jury. Cearley concedes that a single sleeping juror does not per se deprive a defendant of a fair trial. PRP at 37 (citing *United States v. Springfield*, 829 F.2d 860 (9th Cir. 1987)). Assuming these facts are true, Cearley's claim fails because he shows neither actual and substantial prejudice nor a complete miscarriage of justice resulting from these jurors' sleeping. His declaration does not establish what portions of trial the jurors missed, nor how their sleeping prejudiced him. Thus, he fails to carry his burden.

10

## VII. AGGRAVATING SENTENCING FACTORS

Cearley argues that the trial court erred by imposing an exceptional sentence. He contends that the jury's finding that he violated a position of trust is invalid because the jury instruction was erroneous and that the trial court violated his federal and state rights to a jury trial by imposing a mandatory minimum sentence based on facts not found by the jury—namely, his high offender score. Because the trial court found that both of these grounds, "taken together or considered individually," constituted sufficient cause to impose the exceptional sentence, and because the trial court stated that it would impose the same sentence if only one of the grounds was valid, Cearley must demonstrate that both aggravating circumstances are invalid to obtain relief from his exceptional sentence. We hold that the jury instruction was correct and that Cearley was not entitled to a jury determination of his high offender score. Therefore, the trial court did not err in sentencing Cearley.

A.      *Position of Trust Instruction*

Cearley argues that the trial court incorrectly instructed the jury on the "position of trust" aggravating factor. PRP at 39. He argues that the instruction was erroneous because it did not require the jury to find a "nexus" between the position of trust and the crime, and because it defined "position of trust" in an overly inclusive manner. PRP at 39. We disagree.

We review alleged errors of law in jury instructions de novo. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). Jury instructions are proper when they allow each party to argue its theory of the case, they do not mislead the jury, and they inform the jury of the applicable law. *Barnes*, 153 Wn.2d at 382; *State v. McCreven*, 170 Wn. App. 444, 461-62, 284 P.3d 793 (2012). A jury instruction "'must make the relevant legal standard manifestly apparent

11

to the average juror.'" *McCreven*, 170 Wn. App. at 462 (internal quotation marks omitted) (quoting *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996)). Even if a personal restraint petitioner establishes that jury instructions were erroneous, he must also demonstrate that the error caused actual and substantial prejudice. *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 539, 309 P.3d 498 (2013).

Here, the challenged instruction follows Washington Pattern Jury Instruction (WPIC) 300.23 verbatim.[5] In relevant part, it provides: "A defendant *uses* a position of trust to facilitate a crime when . . . ." PRP at 40 (emphasis added). Further, it instructs the jury that "[t]here need not be a personal relationship of trust between the defendant and the victim. It is sufficient if a relationship of trust existed between the defendant and someone who entrusted the victim to the defendant's care." PRP at 40. The statute authorizing this aggravator is RCW 9.94A.535(3)(n), which reads in its entirety: "The defendant *used* his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." (Emphasis added).

Cearley does not show that the instructions failed to make the relevant legal standard manifestly apparent to the average juror. *McCreven*, 170 Wn. App. at 462. First, the instruction properly articulates the nexus between the position of trust and the crime. Both the instruction and the statute contemplate that the defendant "use[]" a position of trust to facilitate a crime. *Compare* PRP at 40, *with* RCW 9.94A.535(3)(n). Thus, the instruction makes the legal standard apparent—that is, that the defendant must use the position of trust to facilitate the crime.

---

[5] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.23, at 728 (3d ed. 2008).

Second, Cearley fails to show that the relevant legal standard requires the prosecution to prove that the defendant "personally be in a position of trust." PRP at 41. Cearley cites no authority for the proposition that the statute has such a requirement, and there is no such requirement in the statute's plain language. *See* RCW 9.94A.535(3)(n). Instead, the statute merely requires the defendant to "use[] his or her position of trust . . . to facilitate" the crime. RCW 9.94A.535(3)(n). The statute does not require the defendant to be in a position of trust with the victim personally. Thus, this claim fails. Cearley fails to show that the challenged instruction was improper, or that any errors in it actually and substantially prejudiced him. *Brockie*, 178 Wn.2d at 539; *McCreven*, 170 Wn. App. at 461-62.

B.      *Offender Score*

Cearley argues that the trial court violated his federal and state rights to a jury trial by imposing a mandatory minimum sentence under RCW 9.94A.535(2)(c), which provides that a judge, not a jury, determines whether a high offender score results in crimes going unpunished. We disagree.

1.  *United States Constitution — Sixth Amendment*

Cearley argues that the judicial imposition of an exceptional sentence based on his high offender score violates his Sixth Amendment right to a jury trial. We disagree.

Our Supreme Court has already considered and rejected Cearley's argument. *State v. Alvarado*, 164 Wn.2d 556, 566-67, 192 P.3d 345 (2008). Here, as in *Alvarado*, the trial court imposed an exceptional sentence under RCW 9.94A.535(2)(c).[6]  "[T]he only factors the trial

---

[6] "The trial court may impose an aggravated exceptional sentence without a finding of fact by a jury [where t]he defendant has committed multiple current offenses and the defendant's high

court relies upon in imposing an exceptional sentence under RCW 9.94A.535(2)(c) are based on criminal history and the jury's verdict on the current convictions[, which b]oth fall under the *Blakely*[7] prior convictions exception, as no judicial fact finding is involved." *Alvarado*, 164 Wn.2d at 566-67 (citation omitted). Thus, because the trial court did not find any facts when it imposed an exceptional sentence based on Cearley's high offender score, his claim fails.

2. *Washington State Constitution — Article I, Section 22*

Cearley also argues that, even if the judicial imposition of an exceptional sentence based on a high offender score does not violate his federal constitutional rights, it violates his state constitutional rights. But our Supreme Court has already rejected this argument. *State v. Smith*, 150 Wn.2d 135, 156, 75 P.3d 934 (2003). Our Supreme Court held that the right to a jury trial under our State Constitution does not extend to proving the existence of a prior conviction. *Smith*, 150 Wn.2d at 156. By the same logic, the right to a jury trial does not extend to proving the existence of current convictions for purposes of imposing an exceptional sentence based on a high offender score. Cearley's claim fails.

VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

Cearley raises multiple ineffective assistance of counsel arguments. For the reasons we discuss below, we hold that he fails to present any meritorious claims of ineffective assistance of counsel.

---

offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2), (2)(c).

[7] *Blakely v. Washington*, 542 U.S. 296, 302, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

A.      *Standard of Review*

To prevail on an ineffective assistance of counsel claim, Cearley must show that defense counsel's performance was deficient and that Cearley was prejudiced by the deficient performance. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A petitioner demonstrates deficient performance by showing that defense counsel's conduct fell below an objective standard of reasonableness. *Rice*, 118 Wn.2d at 888. "In this regard, the court must make every effort to eliminate the distorting effects of hindsight and must strongly presume that counsel's conduct constituted sound trial strategy." *Rice*, 118 Wn.2d at 888-89. In addition, to show deficient performance, the petitioner must show the absence of any conceivable legitimate trial tactic explaining counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

To demonstrate prejudice, Cearley must show a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Crace*, 174 Wn.2d at 840 (quoting *Strickland*, 466 U.S. at 694). Prejudice does not require a showing that counsel's actions more likely than not altered the outcome, but the likelihood of a different result must be substantial, not just conceivable. *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). "[I]f a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice" under the standard for personal restraint petitions. *Crace*, 174 Wn.2d at 846-47.

B.      *Public Trial*

Cearley's petition includes *headings* arguing that his trial counsel was ineffective because he failed to advise Cearley of his right to a public trial and that his appellate counsel was ineffective for failing to raise this claim on direct appeal. But Cearley does not support either of these assertions with legal argument or citations to authority. Such passing treatment of an issue does not merit judicial consideration. *In re Pers. Restraint of Bratz*, 101 Wn. App. 662, 668 n.3, 5 P.3d 759 (2000); *see* RAP 16.7(a)(2)(ii). Accordingly, we do not consider this issue.

C.      *Jury Communication*

Cearley argues that his trial counsel was ineffective because he failed to request a hearing after Cearley told him that victim advocates had spoken to jurors. But Cearley's claim fails because he does not argue or demonstrate how any arguably deficient performance caused him prejudice. Instead, he argues that he would "establish[] the requisite level of prejudice at [an evidentiary] hearing" upon remand. PRP at 26. Because Cearley does not meet his burden to establish that any deficiency caused him prejudice, his claim fails. *Strickland*, 466 U.S. at 700.

D.      *Psychological Evaluation and Child Interview Expert*

Cearley argues that his trial counsel was ineffective for failing to request a psychological evaluation of ADM. Cearley also argues that his trial counsel was ineffective for failing to call an expert on child interview techniques. We disagree.

1. *Failure To Request Psychological Evaluation*

Cearley fails to provide factual support for the deficiency prong because the record and declarations do not show that Cearley's trial counsel knew about ADM's psychological diagnoses. Cearley argues that "there was evidence" that ADM suffered from significant

16

depression, and that this evidence was "available to defense counsel." PRP at 28. He provides her treatment records in support of the assertion that she suffered from depression, but he provides no factual support for the allegation that defense counsel was aware of or had any reason to know of these diagnoses. Thus, he does not provide factual support for the deficiency prong of his argument, and it fails. *Strickland*, 466 U.S. at 700.

      2. *Failure To Call Child Interview Expert*

Cearley also argues that his trial counsel was ineffective for failing to call an expert on child interview protocols. Again, we disagree.

Cearley does not provide factual support for the allegation that his trial counsel failed to investigate the availability of such an expert. Moreover, Cearley does not provide any facts about whether an expert on child interview protocols existed at the time of Cearley's trial or about the testimony any such expert could provide. Instead, he provides studies about child interview protocols and argues that "[t]here is now a robust body of literature and a number of experts who are available to testify" about the dangers of flawed child interviews. PRP at 29. Thus, he cannot show any likelihood of a different result but for counsel's failure to call an expert; he can merely speculate that such an expert existed at the time of his trial and would have testified favorably. Because Cearley provides no factual support, his claim fails.

E.    *Counsel's Behavior*

Cearley argues that his trial counsel was ineffective for being disrespectful, rude, and cold to Cearley during trial. We disagree.

Cearley's claim fails because he concedes that a trial tactic explains his counsel's behavior. Cearley acknowledges that his counsel was rude "only . . . in front of the jury," and

17

"[d]uring breaks he was nicer." PRP (Appendix C). Cearley recalls his trial counsel telling him "not to pay any attention to how he was acting because it was just 'part of the plan.'" PRP (Appendix C). Thus, according to Cearley, his trial counsel behaved coldly to him during trial as part of a trial strategy. It is conceivable this strategy was to pay close attention to the proceedings and remain on guard for any necessary objections. Thus, Cearley cannot show deficient performance. *Grier*, 171 Wn.2d at 33.

F.      *Failure To Notice Sleeping Juror and Move for Mistrial*

Cearley argues that his trial counsel was ineffective for failing to notice that two jurors were sleeping and failing to move for a mistrial on that ground. But, as discussed above, Cearley fails to provide any argument how this deficiency prejudiced him. Therefore, his claim fails. *Strickland*, 466 U.S. at 700.

G.      *Proposing Deficient Instruction*

Cearley argues that his trial counsel was ineffective for proposing a deficient instruction on the "position of trust" sentencing aggravator. PRP at 39. We disagree.

An attorney does not provide deficient performance by not challenging a WPIC when the existing case law does not call the adequacy of the WPIC into question. *See State v. Kyllo*, 166 Wn.2d 856, 866-69, 215 P.3d 177 (2009); *State v. Studd*, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999). As stated above, the "position of trust" instruction followed WPIC 300.23 verbatim. Because Cearley cannot show that existing case law called the validity of WPIC 300.23 into question, he cannot show that his counsel was deficient for proposing it or failing to challenge it. *Kyllo*, 166 Wn.2d at 866-69; *Studd*, 137 Wn.2d at 551. Thus, his claim fails.

## IX. CUMULATIVE ERROR

Finally, Cearley argues that he is entitled to a new trial due to cumulative error. We disagree.

The cumulative error doctrine is limited to instances where several trial errors, standing alone, do not warrant reversal, but when combined deny the defendant a fair trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Here, even assuming for argument that Camenzind made facial gestures during ADM's testimony a couple of times, that jury questionnaires were conducted privately, that a victim's advocate had a conversation with a juror, and that two jurors slept during portions of the trial, Cearley has not presented enough facts to establish that he was not afforded a fair trial.

In summary, Cearley fails to establish any constitutional error resulting in actual and substantial prejudice or any fundamental defect resulting in a total miscarriage of justice. Thus, we deny his personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.