## YELM JIM *vs.* WASHINGTON TERRITORY.

If the record shows the empannelling of a grand jury null and void, an indictment returned by it is a nullity, and the Court should stay proceedings so soon as its attention is directed thereto.

Irregularities having occurred in the selection of a grand jury, by an order of the Court it was discharged, and the sheriff directed to summon sixteen qualified grand jurors from the bystanders; *held* that such order was authorized by section 7, act of January 26, 1857, and that a selection of such jurors was a compliance with the statute.

As preliminary to the introduction of admissions of a prisoner, the public are not compelled to show that the whole conversation in which it was made, is recollected by the witness.   Cross examination affords the means of obtaining a full statement.

This Court will not review erroneous instructions upon mere abstract principles of law.

The bill of exceptions must show, whether instructions given or refused, were pertinent to the case, in order for this Court to examine them.

There is no evidence tending to show a state of war, in anywise affecting this case.

ERROR to the Second Judicial District for Thurston county.

Opinion by STRONG, Associate Justice.

At the last March term of the District Court for the Second Judicial District, the plaintiff in error was indicted, tried, and convicted of murder in the first degree, and sentenced to be hung on the sixth day of May next thereafter.

During the progress of the trial, exceptions were taken to the rulings of the Court upon the admission of testimony; to certain instructions given by the Court to the jury, and to the refusal of the Court to give other instructions asked for by the defendant's counsel.

The case now comes before us upon a writ of error.   In the assignment of error, there are eight points which, in our discussion, we shall consider under four heads, viz:

1. The grand jury which found the bill of indictment was illegally constituted, and consequently, there was no legal indictment.

2. The indictment does not charge the crime of which the defendant was convicted.

3. The Court allowed improper testimony to go to the jury.

4. The Court erred in giving improper, and refusing to give proper instructions to the jury.

A motion to quash the indictment, a motion for a new trial, and a motion in arrest of judgment, were severally made and overruled by the Court, to which overruling exceptions were taken. Other points were reserved by exceptions taken and allowed.

As to the first exception, in regard to the jury. It appears that *venires* issued from the clerk of the District Court, to the several counties of the district, directing the sheriff of each county to summon a certain number of qualified persons to serve as grand jurors. These *venires* were served and duly returned, and the persons summoned were in attendance.

It appearing, however, that irregularity had occurred in selecting and summoning the grand jury, on motion of the prosecuting attorney, they were discharged, and the sheriff directed to summon a grand jury of sixteen qualified persons from the bystanders, which was done, and the sheriff summoned the same jurors who had been previously summoned from the several counties, to whose personal qualifications no exceptions appear to have been taken.

No objections to the array, or challenge to individual jurors or the panel, appear to have been taken or made, at any stage of the proceedings. It is now claimed that the entire proceedings in empannelling the grand jury were to such a degree irregular and unlawful as to render all their acts, as a grand jury, utterly null and void. It is only upon a claim which goes to such extent that this Court can be called upon to investigate the facts in regard to the empannelling of the grand jury.

It has been held that the illegal selection of grand jurors is no cause for quashing an indictment on motion, and it has been further held that irregularities in summoning the grand jury is not a sufficient cause to sustain a motion in arrest of

judgment, but where the record shows the empannelling of a grand jury was entirely null and void, it would then appear that no indictment existed, and the Court should terminate the proceedings at any stage, when this fact was brought to its notice, without particular regard to the form or manner in which it was made to appear.

To determine this question, we must refer to the law providing the mode in which grand juries shall be summoned. It is not necessary that we should advert to all the provisions relating to the selection and summoning of jurors.

The statute, upon that subject, is full and clear, and provides for drawing grand jurors from the body of the district, in such a manner as the legislature deemed would best secure an impartial and qualified jury, coming from each county in the district. Aware, however, of the difficulty which would arise, if absolute regularity was required in the selection of jurors, before the people had become accustomed to the new system of having several counties embraced in one district, with jurors drawn from each, the legislature made this provision, which is the last clause of section 7, of the act passed January 27, 1857, viz:

"When, from any cause, there are not a sufficient number of qualified and competent grand and petit jurors in attendance, the Court may order a sufficient number of qualified jurors to be summoned from any county or counties in the district."

The exception taken to the order, in this case, is, that the order was, in its terms, to summon a jury from the "by-standers," which, it is alleged, was not an order to summon from any county or counties in the district. To determine the force of this objection, we have only to consider that there can be but two kinds of summons for jurors. One where the names of the jurors are in the body of the *venire*, and the sheriff is to summon those persons alone, so named; the other where the sheriff is ordered to summon a given number of qualified persons to serve as jurors, leaving to him the selection of the

9

names or persons to be summoned. In the latter case, it would not alter the character of the jury, whether they were denominated talesmen, by-standers, or persons from the body of the county. Their qualifications, when so selected, must correspond with those required by law, and by-standers returned as qualified, will be presumed to be so qualified, until the contrary is shown.

Nor does it make any difference whether the persons so selected are taken from one or more counties within the district, as, by the act passed January 26, 1857, " county," and " district," so far as judicial proceedings in the District Court are concerned, are synonymous terms.

We think, therefore, that the grand jury were properly summoned, empannelled and sworn, and constituted a legal grand jury.

2. The counsel have failed to point out to us any valid objection to the indictment, and we are unable to see any ourselves. It is the usual form of an indictment for murder in the first degree, and supports the finding of the jury.

3. The admission of illegal evidence. The only evidence legitimately before the Court is that contained in the bill of exceptions, where it is stated that the witness, Andre, was permitted to testify concerning admissions or confessions made by the defendant. What these admissions or confessions were is not stated, but it is claimed as error, that the Court did not permit the defendant's counsel, or compel the prosecuting attorney, to inquire of the witness, *before* he detailed the confessions, whether he, the witness, remembered all that was said by the defendant.

While admitting the rule, that the defendant is entitled to a full statement of all that he said at the time, in relation to the subject matter, we are not aware of any rule of law which requires that the witness shall be interrogated as to his memory of the entire conversation, *before he details* what he does remember. The recollection of the witness, and his liability to tell all that was said, is usually ascertained upon cross examina-

tion, and it does not appear that the right of the defendant to make such inquiry, at the proper time, was asked for and denied by the Court.

4. In regard to the instructions of the Court, and the refusal to give the instructions, asked for by the counsel for the defendant. This point has been much labored by the counsel, and the Court have listened with interest to their able arguments upon international law, concerning the mutual rights and obligations of belligerents, in a state of war, and also upon the relations sustained by Indians and Indian tribes, towards our government, but the entire record does not present a particle of evidence either of the existence of a war, or that the defendant claimed immunity for his acts on the ground that he was an Indian belonging to a tribe of Indians at war with the United States, and that the acts alleged against him were the acts of war, for which he could not be held criminally responsible after its termination.

So far therefore, as the record is concerned, the charge of the Court complained of, and the charge which the Court was asked to give, are mere abstract propositions, not bearing upon the case then at issue.

It is a well settled principle, in reviewing a case upon error, that if a party desires to except to any part of the charge of the Court, he must, by his bill of exceptions, present so much of the evidence as will show that the instructions given or refused, were pertinent to the case. A Court of error will not examine into the opinion of the Court below, to see whether instructions upon abstract propositions of law were correct or not.

It is claimed that the Court should take judicial notice that at the time this murder was alleged to have been committed, the country was in a state of Indian war, and upon this account the defendant was entitled to the instructions asked. While we are not willing to express the opinion that Indian tribes, living within the bounds, and under the protection of an organized territorial government, have such a national character

that they can, at their will, make war, and claim immunity for acts of indiscriminate and barbarous murder, on the plea of legal hostility, we are clearly of the opinion that the plea of an Indian war cannot avail to secure immunity for acts of treachery and murder committed by individual Indians, belonging to tribes not engaged in the war, living among the whites, and in a part of the country not involved in hostility, any more than an alien enemy, living at the time of a war, in the interior of the hostile country could justify himself by a plea of legal war, for killing any unarmed citizen of the country, whom he might happen to meet.

While, therefore, as a part of the history of the country, we know that at or about the time this murder is alleged to have been committed, an Indian war was raging in some portions of the Territory, involving powerful tribes east of the Cascade mountains, we also know, that no tribe, *as a tribe*, west of the Cascades, was engaged in it, and that Thurston county, where this killing occurred, as charged in the indictment, was not what might be called war ground.

We cannot, therefore, see any ground for reversing the judgment of the Court below, on the ground of the instructions given or refused. There is nothing in the record to show the bearing upon the case.

Upon a careful review, therefore, of the entire case, as before us upon the record, we see no good ground for reversal.

The judgment and sentence of the District Court is therefore affirmed, and a mandate will issue to the District Court in accordance herewith.