225 P.3d 913 (2010)
167 Wash.2d 889
STATE of Washington, Respondent,
v.
Aro T.J. WILLIAMS-WALKER, Petitioner.
State of Washington, Respondent,
v.
Curtis Eugene Graham, Petitioner.
State of Washington, Respondent,
v.
Matthew Robert Ruth, Petitioner.
Nos. 78611-9, 78876-6, 79074-4.
Supreme Court of Washington, En Banc.
Argued February 10, 2009.
Decided January 14, 2010.
*915 Susan Marie Gasch, Gasch Law Office, Spokane, WA, Susan F. Wilk, Washington Appellate Project, Andrew Peter Zinner, Nielsen Broman Koch PLLC, Seattle, WA, for Petitioners.
Thomas Marshal Curtis, Snohomish County Prosecutor's Office, Everett, WA, Steven J. Tucker, Mark Erik Lindsey, Spokane County Prosecutor's Office, Spokane, WA, for Respondents.
Jeffrey Erwin Ellis, Ellis Holmes & Witchley PLLC, Seattle, WA, Amicus Curiae on behalf of Washington Association of Criminal Defense Lawyers.
C. JOHNSON, J.
¶ 1 In these consolidated cases, five-year firearm enhancement sentences were imposed on the defendants, where the juries were instructed and asked to find by special verdict whether the defendants were armed with a deadly weapon. We must decide, first, whether this sentence was an error and, second, whether under article I, sections 21 and 22 of the Washington Constitution, this type of error is subject to a harmless error analysis. We hold that this sentence is an error to which the harmless error doctrine does not apply. In State v. Williams-Walker, noted at 132 Wash.App. 1009, 2006 WL 701942, the Court of Appeals vacated a five-year firearm enhancement. In State v. Graham, noted at 132 Wash.App. 1053, 2006 WL 1237275, and State v. Ruth, noted at 134 Wash.App. 1018, 2006 WL 2126311, the Court of Appeals upheld five-year firearm enhancements based on harmless error. We affirm in Williams-Walker and reverse Graham and Ruth; we remand for resentencing consistent with this opinion.

FACTS

A. State v. Williams-Walker

¶ 2 On August 26, 2002, Aro Té Jhon Williams-Walker and Carlos Fuentes arranged to meet with and sell illegal drugs to Ty Hardin, Gene Chamberlin, and Jackie Karol. During the sale, Williams-Walker or Fuentes[1] shot Chamberlin with a .22 caliber semiautomatic pistol and then fled, and Chamberlin died before medical help arrived.
¶ 3 The State charged Williams-Walker with first degree robbery and first degree murder, as a principal or accomplice in felony murder, with a firearm enhancement. At trial, the jury was provided a special verdict form that asked, "[w]as the defendant armed with a deadly weapon at the time of the commission of the crime . . . ?" CP (Williams-Walker) at 287-89 (emphasis added). The jury answered the special verdict form in the affirmative. The trial court sentenced Williams-Walker to 381 months, including a 60-month firearm enhancement. The Court of Appeals, Division Three, affirmed Williams-Walker's conviction, reversed the sentencing enhancement, and remanded for resentencing consistent with the deadly weapon special verdict. Williams-Walker, 2006 WL 701942.

B. State v. Graham

¶ 4 The State charged Curtis Eugene Graham with one count of first degree assault with a firearm and one count of unlawful *916 possession of a firearm in the second degree. The information alleged that on January 14, 2004, Graham assaulted Mohammed Sylla, with a .380 caliber pistol.
¶ 5 At trial, a deadly weapon special verdict form was provided to the jury because the State sought a sentencing enhancement. Regarding the special verdict, the trial court instructed the jury that the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the assault. The jury returned the special verdict form indicating it found that Graham was armed with a deadly weapon during the commission of first degree assault. CP (Graham) at 9.
¶ 6 The trial court sentenced Graham to 121 months for the first degree assault conviction and added a 60-month firearm enhancement based upon the deadly weapon special verdict. The Court of Appeals affirmed Graham's conviction and sentence. Graham, 2006 WL 1237275.

C. State v. Ruth

¶ 7 Matthew Robert Ruth was charged with two counts of first degree assault with a firearm, specifying Ruth was armed with a firearm during the commission of an assault against Drew Eden and Daniel Custer on November 5, 2003.
¶ 8 At trial, the special verdict form asked the jury to determine whether the defendant was armed with a deadly weapon during the commission of the offenses. The jury answered in the affirmative.
¶ 9 At sentencing, based upon the jury's special verdict finding, the trial court applied the 60-month firearm enhancement to each count. The Court of Appeals, Division One, in a per curiam opinion, affirmed Ruth's conviction and sentence. Ruth, 2006 WL 2126311.

D. Petitions for Review

¶ 10 We granted review in each case solely as to the issue of the firearm sentence enhancement and consolidated the three cases under State v. Williams-Walker, 163 Wash.2d 1059, 187 P.3d 753 (2008). We deferred review pending the United States Supreme Court's decision in Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (Recuenco II). In Recuenco II, 548 U.S. at 222, 126 S.Ct. 2546, the Court held a harmless error analysis may be applied to Blakely errors for Sixth Amendment purposes. The Court noted that whether a Blakely error was subject to harmless error under a state constitutional analysis remained an open question. Blakely v. Washington, 542 U.S. 296, 318, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
¶ 11 In supplemental briefs, Ruth and Graham argued this court should hold that harmless error does not apply to Blakely violations under a state constitutional analysis. Ruth, Graham, and Williams-Walker incorporated one another's arguments pursuant to RAP 10.1(g).

ISSUES
(A) Did the trial courts violate the defendants' state constitutional right to a jury trial when they imposed firearm enhancements after the juries found by special verdict that the defendants committed their crimes using deadly weapons?
(B) Under our statutes and precedent, may harmless error analysis apply in the above situation?

ANALYSIS
(A) Did the trial courts violate the defendants' right to a jury trial?
¶ 12 Our state constitution provides that "[t]he right of trial by jury shall remain inviolate. . . ." CONST. art. I, § 21. Our prior cases have held this language to establish that in some circumstances, our state constitution provides greater protection for jury trials than the federal constitution. State v. Smith, 150 Wash.2d 135, 151, 75 P.3d 934 (2003) (stating that the textual differences between the federal and state constitutions indicate the general importance of the right to jury trial in the Washington Constitution); see also City of Pasco v. Mace, 98 Wash.2d 87, 99, 653 P.2d 618 (1982) (noting that "our state constitution was more extensive than that which was protected by the *917 federal constitution when it was adopted in 1789").[2] But under both the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington Constitution, the jury trial right requires that a sentence be authorized by the jury's verdict.
¶ 13 The United States Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Blakely, the Court clarified this rule, holding "that the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303, 124 S.Ct. 2531. Even before the Court decided Apprendi, we provided similar protections. In State v. Frazier, we held:
Where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue of whether that factor is present, must be presented to the jury upon proper allegations and a verdict thereon rendered before the court can impose the harsher penalty.
81 Wash.2d 628, 633, 503 P.2d 1073 (1972). The failure to submit a sentencing factor to a jury for a finding thus violates a defendant's right to a jury trial under both the federal and state constitutions.
¶ 14 Three statutory provisions govern sentence enhancements based on the defendant's use of a firearm or other deadly weapon. Former RCW 9.94A.510(3), (4) 2001, specified two separate sentence enhancements: five years when a firearm was used to perpetrate a class A felony[3] and two years when a "deadly weapon other than a firearm" was used to commit a class A felony.[4] Different jury findings thus authorize different sentence enhancements.[5] A third provision, former RCW 9.94A.602 (2001), clarified that "deadly weapon" includes firearms and requires a jury to find the defendant's use of such a weapon by special verdict.[6] Taken together, these provisions *918 establish that while a jury must find by special verdict a defendant's use of both types of deadly weapons (firearms and others), in order to authorize either the firearm or deadly weapon enhancement, the finding also must specify the type of weapon used. Where a jury finds by special verdict that a defendant used a "deadly weapon" in committing the crime (even if that weapon was a firearm), this finding signals the trial judge that only a two-year "deadly weapon" enhancement is authorized, not the more severe five-year firearm enhancement. When the jury makes a finding on the lesser enhancement, the sentencing judge is bound by the jury's determination.
¶ 15 We have recognized that a sentencing court violates a defendant's right to a jury trial if it imposes a firearm enhancement without a jury authorizing the enhancement by explicitly finding that, beyond a reasonable doubt, the defendant committed the offense while so armed. State v. Recuenco, 163 Wash.2d 428, 440, 180 P.3d 1276 (2008) (Recuenco III). In Recuenco III, the trial court's imposition of a firearm enhancementwhere only a deadly weapon enhancement had been charged by the State or authorized by the jurywas unauthorized and therefore in error. The cases before us present a different and much closer question: whether a trial court may impose a firearm enhancement in the absence of a jury finding by special verdict that the defendant used a firearm (or deadly weapon).
¶ 16 In each of the three cases here, the court submitted to the jury the special verdict form for a deadly weapon enhancement, not the form for a firearm enhancement, which was originally alleged, and the jury returned answers to those deadly weapon special verdict forms. In each case, the jury thus authorized only a deadly weapon enhancement, not the more severe firearm enhancement.
¶ 17 The State argues that the firearm enhancement was authorized in the cases of Ruth and Graham because the juries implicitly found, by their guilty verdicts, that the defendants committed the crimes using a firearm.[7] Both Ruth and Graham were charged with first degree assault with a firearm, a conviction of which requires the jury to find that a firearm was used.[8]See former RCW 9.94A.510; RCW 9.41.010; former RCW 9.94A.602. We decline to hold that guilty verdicts alone are sufficient to authorize sentence enhancements. If we adopted this logic, a sentencing court could disregard altogether the statutory requirement that the jury find the defendant's use of a deadly weapon or firearm by special verdict. Such a result violates both the statutory requirements and the defendant's constitutional right to a jury trial.
¶ 18 In the cases before us, the juries were given special verdict forms for a deadly weapon enhancement, and they returned answers in the affirmative. The fact that the State provided notice in the information to each of the defendants that it would seek a firearm enhancement does not control in cases where a deadly weapon special verdict form is submitted to the jury. When the jury is instructed on a specific enhancement and makes its finding, the sentencing judge is bound by the jury's finding.
¶ 19 By imposing firearm enhancements, the trial courts here relied not on the juries' special verdicts but rather on the underlying *919 guilty verdicts. This results in sentences unsupported by the juries' findings. Disregard of the sentence enhancement authorized by the special verdicts violates the defendants' rights to a jury trial under article I, sections 21 and 22. For purposes of sentence enhancement, the sentencing court is bound by special verdict findings, regardless of the findings implicit in the underlying guilty verdict. Where a firearm is used in the commission of a crime, the only way to determine which enhancement is authorized is to look at the jury's special findings. A sentence enhancement must not only be alleged, it also must be authorized by the jury in the form of a special verdict.

(B) May the imposition of an unauthorized sentence ever be harmless?
¶ 20 In Recuenco II, the United States Supreme Court held that the "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." 548 U.S. at 222, 126 S.Ct. 2546. Therefore, under a federal Sixth Amendment analysis, a Blakely error may, under certain circumstances, be subject to a harmless error analysis. Recuenco II, 548 U.S. at 219-20, 126 S.Ct. 2546. "'[M]ost constitutional errors can be harmless.'" State v. Frost, 160 Wash.2d 765, 781, 161 P.3d 361 (2007) (alteration in original) (internal quotation marks omitted) (quoting Recuenco II, 548 U.S. at 218, 126 S.Ct. 2546).
¶ 21 Here, however, the question is whether a sentencing enhancement that violated the defendant's right (under article I, sections 21 and 22) to have a jury determine all the factors that subject him to greater punishment can be harmless under our state constitution. In these cases, the error was made, not in the jury instruction, but in the trial court's imposition of a sentence.
¶ 22 On remand from Recuenco II, we determined that harmless error analysis does not apply where "no error occurred in the jury's determination of guilt." Recuenco III, 163 Wash.2d at 441, 180 P.3d 1276. There, we did not decide whether a Blakely error may ever be harmless under a state constitutional analysis. Instead we held in part that harmless error analysis was not applicable because the error occurred when the trial court exceeded its authority in imposing a sentence neither charged nor authorized by the jury. 163 Wash.2d at 440, 442, 180 P.3d 1276.
¶ 23 Unlike in Recuenco III, it is undisputed here that the State charged the defendants with crimes and/or introduced evidence consistent with the use of a firearm. And, from an evidentiary view, no dispute exists that the deadly weapon was a firearm. But this distinction from Recuenco III makes no difference. In that case, we based our holding on the fact that the trial court exceeded its authority by imposing a firearm enhancement without a jury determination that the defendant was armed with a firearm. 163 Wash.2d at 440, 180 P.3d 1276 (noting "[f]urther, Recuenco lacked any notice that he could be sentenced under the firearm enhancement" (emphasis added)). The trial court's error in Recuenco IIIimposing the firearm enhancement without a special verdict to support itoccurred in the sentencing phase; no error occurred during trial. As in Recuenco III, the errors in the cases before us occurred during sentencing, not in the jury's determination of guilt. Thus, as in that case, because the trial courts' errors occurred after the jury verdicts were reached, the harmless error doctrine does not apply.
¶ 24 The dissent mischaracterizes the error that occurred. No error exists in the charging document, and no error exists in the instructions or jury findings. The error occurred when the judge imposed a sentence not authorized by the jury's express findings. The problem arises from the statutory definition of "deadly weapon" as including a firearm. Former RCW 9.94A.602. Because of this definition, the only way to determine the applicable sentence enhancement is to look to the jury's findings. Quite simply, only three options exist: First, if the jury makes no finding, no sentence enhancement may be imposed. Second, where the jury finds the use of a deadly weapon (even if a firearm), then the deadly weapon enhancement is authorized. Finally, where the jury finds the use of a firearm, then the firearm enhancement applies. Critically, the sentencing *920 judge can know which (if any) enhancement applies only by looking to the jury's special findings. Where the jury makes such a finding, the sentencing judge is bound by that finding. Where the judge exceeds that authority, error occurs that can never be harmless.

CONCLUSION
¶ 25 We affirm the Court of Appeals in Williams-Walker and reverse the Court of Appeals in Graham and Ruth. We remand the cases for resentencing consistent with this opinion.
WE CONCUR: BARBARA A. MADSEN, C.J., GERRY L. ALEXANDER, RICHARD B. SANDERS, SUSAN OWENS and DEBRA L. STEPHENS, JJ.
FAIRHURST, J. (dissenting).
¶ 26 The majority is correct when it concludes that a court violates the right to a jury trial under both the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the state constitution if it imposes a firearm enhancement without a corresponding jury determination. However, the majority is incorrect when it concludes that the jury's finding must come in the form of a firearm special verdict. I would conclude that submitting a deadly weapon special verdict form, as opposed to a firearm special verdict form, does not bar the court from imposing a firearm sentencing enhancement. Because I so conclude, I must continue on to determine whether a Blakely[1]-type error is subject to harmless error analysis. I would hold that such errors may be harmless.

I. ISSUES
A. Did the trial courts violate the defendants' jury trial right by imposing a firearm sentencing enhancement where the juries returned special verdict forms indicating the defendants were armed with a deadly weapon during the commission of the offense?
B. Can a sentencing enhancement that violates a defendant's right to have a jury determine all factors that subject him to greater punishment be harmless under a state constitutional analysis?
C. If a Blakely-type error is subject to harmless error analysis under state law, were the errors harmless here?

II. ANALYSIS
A. Did the trial courts violate the defendants' jury trial right by imposing a firearm sentencing enhancement where the juries returned special verdict forms indicating the defendants were armed with a deadly weapon during the commission of the offense?
¶ 27 First, we must look to the three statutory provisions at issue: former RCW 9.94A.510(3) (2001),[2] former RCW 9.94A.510(4) (2001),[3] and former RCW 9.94A.602 (2001) recodified as RCW 9.94A.825.[4] Former RCW 9.94A.510(3) and *921 (4) provide mandatory sentence enhancements where the defendant was armed with a "firearm" or "deadly weapon other than a firearm." Prosecutors must charge defendants with one of these enhancements "if sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify conviction by a reasonable and objective fact finder." RCW 9.94A.411(2)(a), .470. Former RCW 9.94A.602 requires the use of a special verdict form in jury trials where the State alleged and evidence establishes that the crime was committed with a "deadly weapon." The definition of "deadly weapon" includes "firearm."[5]Id.
¶ 28 The majority concludes that these three statutory provisions impose a requirement that a firearm sentencing enhancement is authorized only when a firearm special verdict form is used. Majority at 9-10. The majority's mistake is in conflating former RCW 9.94A.510(3) and (4) with former RCW 9.94A.602. These sections impose separate requirements.
¶ 29 The weapon enhancement provisions say absolutely nothing about special verdict forms. See former RCW 9.94A.510(3), (4). The firearm enhancement provision, by its plain text, mandates imposition of a firearm enhancement every time an offender is armed with a firearm. Former RCW 9.94A.510(3). If RCW 9.94A.510(3) and (4) were standing alone, there would be no requirement for any special verdict form.
¶ 30 The special verdict requirement comes solely from former RCW 9.94A.602. The text of former RCW 9.94A.602 simply requires that when a deadly weapon (including a firearm) is alleged and supported by evidence at trial, the jury must find by special verdict whether the defendant "was armed with a deadly weapon." When a jury finds by special verdict that any deadly weapon was used, it has met all of the requirements of former RCW 9.94A.602. The statute nowhere states that the special verdict must specify what type of weapon was used.[6]See id.
¶ 31 While the federal and state constitutions require facts authorizing sentence enhancements to be found by a jury beyond a reasonable doubt, there is no constitutional requirement that they be found by special verdict. The United States Supreme Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Court later clarified that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The majority correctly notes that we have provided similar protections at the state level. Majority *922 at 917 (citing State v. Frazier, 81 Wash.2d 628, 503 P.2d 1073 (1972)). However, we have explained that "Apprendi and its progeny do not require a specific format for the jury to conclude the existence of facts raising a punishment beyond its statutory maximum." State v. Mason, 160 Wash.2d 910, 937, 162 P.3d 396 (2007) (citing State v. Mills, 154 Wash.2d 1, 9-10, 109 P.3d 415 (2005)), cert. denied, ___ U.S. ___, 128 S.Ct. 2430, 171 L.Ed.2d 235 (2008). The federal and state constitutions merely require that the facts necessary to enhance the sentence are found by a jury beyond a reasonable doubt.
¶ 32 Because no statute requires that the special verdict form specify what type of deadly weapon the defendant was armed with, and because the federal and state constitutions do not require sentencing factors to be found in any specific form, the finding that the defendant was armed with a firearm need not be contained in a special verdict for the court to impose a firearm enhancement.
¶ 33 Because I would hold that there is no requirement that a firearm finding come in the form of a special verdict, I must determine whether the enhancements imposed in the consolidated cases meet the requirements of former RCW 9.94A.602 and the requirements of the state and federal constitutions. In all three cases, the juries returned special verdicts that the defendants were armed with a deadly weapon at the time they committed their crimes. II Clerk's Papers (CP) (Williams-Walker) at 299; I CP (Graham) at 47; I CP (Ruth) at 49, 51. Therefore, they have satisfied the requirement of former RCW 9.94A.602. I must next determine whether the enhancements have met the constitutional requirements described in Blakely.
¶ 34 Blakely simply requires that a sentence must be authorized by facts reflected in the jury's verdict. 542 U.S. at 303-04, 124 S.Ct. 2531. In the instant cases, that means the courts were only authorized to impose the firearm sentence enhancements if the juries found beyond a reasonable doubt that the defendants were armed with a firearm at the time they committed their crimes. See former RCW 9.94A.510(3). Here, I find persuasive the reasoning of the Court of Appeals in State v. Pharr, 131 Wash.App. 119, 126 P.3d 66 (2006), review denied, 160 Wash.2d 1022, 163 P.3d 794 (2007). In Pharr, the jury returned a special verdict that Pharr had been armed with a deadly weapon. Id. at 122, 126 P.3d 66. The trial court imposed a firearm sentencing enhancement. Id. The Court of Appeals opinion started with the premise that we presume juries follow their instructions. Id. at 124, 126 P.3d 66 (citing State v. Lord, 117 Wash.2d 829, 861, 822 P.2d 177 (1991)). Because the jury had been instructed that it could only return "yes" on the deadly weapon special verdict form if it found that Pharr had been armed with a firearm, the court reasoned that the jury necessarily found that Pharr had been armed with a firearm when it returned "yes" on the special verdict. Id. Therefore, it was not error for the judge to impose the firearm enhancement. Id. at 125, 126 P.3d 66.
¶ 35 The majority finds fault with Pharr on statutory and constitutional grounds. Majority at 918 n. 7. It is unclear whether the majority's decision stems solely from its conclusion that firearm enhancements are authorized only when a special verdict form specifies that a firearm was used or if the constitutional grounds are independent. The majority broadly "decline[s] to hold that guilty verdicts alone are sufficient to authorize sentence enhancements." Majority at 918. If this holding has an independent basis in our state constitution, it is a victory of form over substance. First, we have already stated that the form of a jury's finding does not matter for the purposes of Blakely. Mason, 160 Wash.2d at 937, 162 P.3d 396. Second, it is unclear what benefit is derived from requiring a jury to find the existence of the same fact twice. The impact of a sentence enhancement is in the sentencing phase. In noncapital cases, a jury is not supposed to consider what punishment will be imposed. State v. Murphy, 86 Wash.App. 667, 671, 937 P.2d 1173 (1997); 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02, at 13 (3d ed.2008). Therefore, there is no reason to specially segregate one jury finding from another. If the majority dislikes the fact that a single factual *923 finding can be both an element of the crime and of an enhancement, it should address the validity of that scheme when the question is before us. As far as the constitutional right to a jury trial is concerned, the question should simply be whether the jury found the necessary fact to be true beyond a reasonable doubt.
¶ 36 Here, we have a similar situation to the one in Pharr. In the case of Matthew Robert Ruth, the jury was instructed,
[f]or purposes of the special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crime in [c]ount I [and count II]. A "firearm" is a weapon or device from which a projectile may be fired by an explosive such as gunpowder.
I CP (Ruth) at 68, 70. Additionally, the "to convict" instructions for both counts of first degree assault required the jury to find the assaults were committed with a firearm. Id. at 67, 69. The jury returned guilty verdicts on both counts and answered "yes" to the special verdict. Id. at 49-52. The Court of Appeals concluded that, despite the "imprecise" language of the verdict form, the jury had necessarily found Ruth was armed with a firearm. State v. Ruth, noted at 134 Wash. App. 1018, 2006 WL 2126311, at *7 (citing Pharr, 131 Wash.App. at 124, 126 P.3d 66). The jury was required to find beyond a reasonable doubt that Ruth was armed with a firearm in order to answer "yes" to whether he was armed with a deadly weapon. Also, the jury had to find beyond a reasonable doubt that Ruth was armed with a firearm in order to convict him of the assault charges. I agree with the Court of Appeals that the sentencing court did not violate Ruth's right to a jury trial when it imposed the firearm sentencing enhancement because the jury had found beyond a reasonable doubt that Ruth was armed with a firearm.
¶ 37 For Curtis Eugene Graham, the special verdict instructions did not require the jury to find Graham had been armed with a firearm in order to answer "yes" to whether he had been armed with a deadly weapon. State v. Graham, noted at 132 Wash.App. 1053, 2006 WL 1237275. However, the trial court did instruct the jury that to convict Graham of first degree assault, it must find the assault was committed with a firearm. I CP (Graham) at 61. The jury found Graham guilty of first degree assault and unlawful possession of a firearm arising out of the same incident. Id. at 46, 48.
¶ 38 The Court of Appeals concluded the trial court acted within its authority when it imposed the firearm enhancement because the jury explicitly found beyond a reasonable doubt that Graham was armed with a firearm when it found him guilty of assault in the first degree. Graham, 2006 WL 1237275, at *7. I would agree and hold the sentencing court did not violate Graham's right to a jury trial when it imposed the firearm sentencing enhancement because the jury found beyond a reasonable doubt that Graham was armed with a firearm.
¶ 39 Unlike the instructions in Ruth and in Graham, neither the "to convict" nor the special verdict instructions for Aro Té Jhon Williams-Walker required the jury to find Williams-Walker had been armed with a firearm. Because the jury was not given an opportunity to distinguish between a firearm and a deadly weapon other than a firearm, the trial court imposed a firearm sentencing enhancement based upon an incomplete verdict. See Washington v. Recuenco, 548 U.S. 212, 221, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (Recuenco II). When the trial court filled the gap in the jury's verdict by making the additional finding that the deadly weapon was a firearm, it violated Williams-Walker's jury trial right because the enhancement was not imposed "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531; State v. Nass, 76 Wash.2d 368, 370, 456 P.2d 347 (1969). I would, therefore, affirm the Court of Appeals holding that the trial court in Williams-Walker erred when it imposed the firearm sentencing enhancements.

B. Can a sentencing enhancement that violates the defendant's right to have a jury determine all factors that subject him to greater punishment be harmless under a state constitutional analysis?
¶ 40 "`[M]ost constitutional errors can be harmless.'" State v. Frost, 160 Wash.2d 765, *924 781, 161 P.3d 361 (2007) (alteration in original) (quoting Recuenco II, 548 U.S. at 218, 126 S.Ct. 2546 (quoting Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999))), cert. denied, ___ U.S. ___, 128 S.Ct. 1070, 169 L.Ed.2d 815 (2008). Constitutional errors requiring automatic reversal are deemed structural. Id. "A structural error resists harmless error review completely because it taints the entire proceeding." State v. Levy, 156 Wash.2d 709, 725, 132 P.3d 1076 (2006). It is an error "`affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself,'" "`necessarily render[ing] a trial fundamentally unfair.'" Neder, 527 U.S. at 8, 119 S.Ct. 1827 (quoting Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) and Rose v. Clark, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)).
¶ 41 The United States Supreme Court has held that omitting an element from a jury instruction is subject to a harmless error analysis. Neder, 527 U.S. at 15, 119 S.Ct. 1827. We adopted the Court's harmless error analysis as applied to instructional errors in State v. Brown, 147 Wash.2d 330, 58 P.3d 889 (2002). We held, "[a]n erroneous instruction is harmless if, from the record in a given case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 332, 58 P.3d 889. We held the test was whether the misstated or missing element was supported by uncontroverted evidence, so that the court concludes beyond a reasonable doubt the verdict would have been the same without the error. Id. at 341, 58 P.3d 889 (citing Neder, 527 U.S. at 18, 119 S.Ct. 1827).
¶ 42 The Court extended this same reasoning to Blakely violations. Recuenco II, 548 U.S. at 222, 126 S.Ct. 2546. In Recuenco II, a criminal defendant was convicted of second degree assault and received a firearm enhancement as part of his sentence. Id. at 214-15, 126 S.Ct. 2546. Use of a firearm was not an element of second degree assault, and the special verdict form referred only to a "deadly weapon." Id. at 214, 126 S.Ct. 2546. On appeal, we found that because the jury had not found beyond a reasonable doubt that the defendant had been armed with a firearm, it was an error under Blakely to impose the sentence enhancement. State v. Recuenco, 154 Wash.2d 156, 162, 110 P.3d 188 (2005), rev'd, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (Recuenco I). We also concluded that Blakely errors could never be harmless under the Sixth Amendment. Id. at 164, 110 P.3d 118 (citing State v. Hughes, 154 Wash.2d 118, 110 P.3d 192, abrogated by Recuenco II, 548 U.S. 212, 126 S.Ct. 2546 (2006)). The United States Supreme Court disagreed and concluded that Blakely violations could be subject to harmless error analysis under the Sixth Amendment. Recuenco II, 548 U.S. at 222, 126 S.Ct. 2546. The Court found Neder indistinguishable stating that,
we concluded that the error in Neder was subject to harmless-error analysis, even though the District Court there not only failed to submit the question of materiality to the jury, but also mistakenly concluded that the jury's verdict was a complete verdict of guilt on the charges and imposed sentence accordingly. Thus, in order to find for [Recuenco], we would have to conclude that the harmless-error analysis would apply if Washington had a crime labeled "assault in the second degree while armed with a firearm," and the trial court erroneously instructed the jury that it was not required to find a deadly weapon or a firearm to convict, while harmless error does not apply in the present case. This result defies logic.
Recuenco II, 548 U.S. at 221-22, 126 S.Ct. 2546.
¶ 43 The Court remanded the case to us to determine whether such violations could be harmless under our state constitution. Id. at 218 n. 1, 126 S.Ct. 2546. We avoided that question by focusing on the State's failure to allege a firearm enhancement in the information. State v. Recuenco, 163 Wash.2d 428, 441, 180 P.3d 1276 (2008) (Recuenco III). Here, we cannot make that distinction because the information properly alleged a firearm enhancement against Williams-Walker. I CP (Williams-Walker) at 51-52.
*925 ¶ 44 The majority asserts that the failure to allege a firearm enhancement in Recuenco III is a distinction that makes no difference. However, the majority misunderstands our opinion in Recuenco III. The majority ostensibly agrees that Recuenco III never addressed whether a Blakely error could ever be harmless under our state constitution. Majority at 919. However, by concluding that the charging error in Recuenco III makes no difference, the majority is asserting exactly that.
¶ 45 In Recuenco III, there were two errors, but only one of those errors was held to not be amenable to harmless error analysis. The first error in Recuenco III was that a firearm enhancement was imposed without a jury finding beyond a reasonable doubt that the defendant had been armed with a firearm. 163 Wash.2d at 440, 180 P.3d 1276. This is simply a Blakely error and, as the majority states, we did not rule whether it could be harmless. The second error in Recuenco III was that the defendant was not given notice of the firearm enhancement because it was not charged in the information and the prosecutor did not submit a firearm special verdict form. Id. at 441, 180 P.3d 1276 ("However, this case is distinguishable from Neder. In Neder, the defendant received notice because he was properly charged."). We held it was this lack of notice that was not subject to a harmless error analysis. Id. Because the information, the special verdict form, and the jury's determination only referenced a deadly weapon and not a firearm, there was no "gap" for the court to fill. Id. However, the lack of notice could have been resolved by either properly charging the firearm enhancement or submitting a special verdict form that specified a firearm enhancement.
¶ 46 Here, notice is not an issue because the firearm enhancement was properly charged. Because we have no other reason for distinguishing Neder, the Court's opinion in Recuenco II applies to this case. Therefore, I would hold that the trial court's failure to submit a firearm determination to the jury is subject to a harmless error analysis under federal law. Accordingly, I continue on to determine whether such an error is subject to a harmless error analysis under state law.
¶ 47 "Once this court has determined that a particular provision of the state constitution has an independent meaning using the factors outlined in [State v.] Gunwall, [106 Wash.2d 54, 720 P.2d 808 (1986),] it need not reconsider whether to apply a state constitutional analysis in a new context." State v. McKinney, 148 Wash.2d 20, 26, 60 P.3d 46 (2002) (citing State v. Ladson, 138 Wash.2d 343, 348, 979 P.2d 833 (1999)). We conducted an independent state analysis of the jury trial right under article I, sections 21 and 22, in State v. Smith, 150 Wash.2d 135, 75 P.3d 934 (2003). In Smith, we determined the jury trial right under our state constitution may be broader generally than the federal right. Id. at 156, 75 P.3d 934. Whether it offers greater protections varies with the context. State v. Hobble, 126 Wash.2d 283, 298, 892 P.2d 85 (1995); Smith, 150 Wash.2d at 153, 75 P.3d 934 ("Even if the right to jury trial is broader under our state constitution, we still must determine the nature and extent of the right."). We must therefore examine whether our state jury trial right provides greater protections in the context of jury determinations of sentencing factors.
¶ 48 We have interpreted article I, section 21 as guaranteeing "that the right of trial by jury as it existed in the territory at the time when the constitution was adopted should be continued unimpaired and inviolate." State ex rel. Mullen v. Doherty, 16 Wash. 382, 384-85, 47 P. 958 (1897) (citing Whallon v. Bancroft, 4 Minn. 109 (1860); State ex rel. Clapp v. Minn. Thresher Mfg. Co., 40 Minn. 213, 41 N.W. 1020 (1889); Taliaferro v. Lee, 97 Ala. 92, 13 So. 125 (1893)). The key to determining whether our state constitution offers greater jury trial rights within a particular context is the state of the law at the time of adoption of the constitution. Hobble, 126 Wash.2d at 300, 892 P.2d 85; Smith, 150 Wash.2d at 151, 75 P.3d 934; City of Pasco v. Mace, 98 Wash.2d 87, 96, 653 P.2d 618 (1983) (rights under common law preserved); In re Ellern, 23 Wash.2d 219, 224, 160 P.2d 639 (1945) (rights under territorial statutes preserved).
*926 ¶ 49 Under the Code of 1881, either party had a right to demand a jury trial on any issue of fact. Code of 1881, ch. XVIII, § 248; ch. LXXXVII, § 1078. Just as under federal law, trial courts were required to submit every element of the offense to the jury, and the State was required to include every necessary factual allegation in its indictment. McClaine v. Territory, 1 Wash. 345, 347, 351, 25 P. 453 (1890). A jury was allowed to find the defendant not guilty of the charged offense, but guilty of a lesser included offense. Code of 1881, ch. LXXXVII, § 1097. The right to factual determinations by a jury was not unlimited, however. There was no right to a jury trial at sentencing. Id. § 1103; Smith, 150 Wash.2d at 154, 75 P.3d 934 (noting Washington abolished the jury role in sentencing prior to adoption).
¶ 50 Errors analogous to the failure to submit a sentencing factor to the jury were subject to harmless error analysis at the time our state constitution was adopted. See, e.g., Code of 1881, ch. XCI, § 1147; Yelm Jim v. Wash. Territory, 1 Wash. Terr. 63, 67 (1859) (holding party alleging error in jury instruction must provide evidence showing the instruction was pertinent to the case); Brown Bros. & Co. v. Joe Forest, 1 Wash. Terr. 201, 202 (1867) (holding a party alleging an instructional error must show prejudice based upon all the instructions "taken together"); McClaine, 1 Wash. at 353-55, 25 P. 453 (holding instructional error not harmless where essential element of the offense was omitted such that jury was likely misled); State v. Conahan, 10 Wash. 268, 269, 38 P. 996 (1894); State v. Witherow, 15 Wash. 562, 563, 46 P. 1035 (1896) (holding any instructional error was harmless as the "proof conclusively showed that the defendants were guilty of the crime with which they were charged"); State v. Courtemarshe, 11 Wash. 446, 450, 39 P. 955 (1895) (holding error was harmless where considered as a whole the jury could not have been misled by the instructions so that the verdict left "no room for doubt or speculation").
¶ 51 In Conahan, the trial court improperly placed the burden of proving self-defense upon the defendant. 10 Wash. at 269, 38 P. 996. Conahan had bitten off another man's ear during a fight. Id. at 268, 38 P. 996. The trial court had instructed the jury if it found beyond a reasonable doubt Conahan had committed the act, "`then the burden of proof [was] upon Conahan to show that he could not defend himself from bodily harm without resorting to biting the left ear of Stapleton.'" Id. at 269, 38 P. 996 (quoting jury instruction). Rather than holding the error was automatically reversible, we looked to whether "it affirmatively appears from the record that the error was such as not to prejudice the rights of the defendant." Id. From the record, we determined that the defendant's own testimony showed the defendant and the victim were fighting, the victim had no weapons, and the victim made no attempt to inflict great bodily injury. Id. at 270, 38 P. 996. We concluded that the jury would have returned the same verdict absent the error. Id. As the defendant was not harmed by the erroneous instructions, the judgment was affirmed. Id.
¶ 52 Early cases in which we found errors reversible per se are similar to federal structural error cases. See Neder, 527 U.S. at 8, 119 S.Ct. 1827 (structural errors include complete denial of counsel, biased trial judge, racial discrimination in grand jury selection, denial of self-representation, denial of public trial, and defective reasonable doubt instruction). For example, in State v. Murphy, 9 Wash. 204, 217, 37 P. 420 (1894), we found the error reversible per se where the defendant's right to an impartial jury was violated by the trial court's refusal to sustain a challenge to a juror where the record established bias. See also State v. Rutten, 13 Wash. 203, 208, 43 P. 30 (1895).
¶ 53 Our subsequent case law in which we analyzed Blakely-type errors under a state constitutional analysis provides further support for applying a harmless error analysis. In State v. Tongate, 93 Wash.2d 751, 613 P.2d 121 (1980), we held that the trial court's failure to provide a separate reasonable doubt instruction as to a sentencing enhancement special verdict was subject to harmless error review unless the trial court failed to give any reasonable doubt instruction. State v. Fowler, 114 Wash.2d 59, 64, 785 P.2d 808 (1990), overruled on other grounds, State v. *927 Blair, 117 Wash.2d 479, 816 P.2d 718 (1991). In State v. Claborn, 95 Wash.2d 629, 628 P.2d 467 (1981), we found harmless error where the trial court failed to provide a reasonable doubt instruction regarding a deadly weapon and firearm enhancement. Id. at 632, 628 P.2d 467. The record showed the defendant was armed with a .357 caliber handgun, was seen armed by eyewitnesses during the crime charged, shot at police officers, and that casings and bullets were recovered at the scene. Id. at 632-33, 628 P.2d 467. We held "[w]ith these facts before us, we have no hesitancy in holding the jury could have reached no result other than that the crimes charged herein occurred while the appellant was armed with a deadly weapon and a firearm." Id. at 633, 628 P.2d 467; see also State v. Hall, 95 Wash.2d 536, 540, 627 P.2d 101 (1981) ("It is undisputed that guns were in fact seen, guns were in fact used and real bullets were in fact fired."); In re Pers. Restraint of Taylor, 95 Wash.2d 940, 943-44, 632 P.2d 56 (1981) (holding Tongate error was harmless where defendant did not dispute use of firearm, but instead argued identity). Where, however, we found the evidence failed to establish the use of a firearm in fact, we found the failure to provide a reasonable doubt instruction as to the special verdict to be reversible error. State v. Pam, 98 Wash.2d 748, 754, 659 P.2d 454 (1983), overruled on other grounds, State v. Brown, 111 Wash.2d 124, 761 P.2d 588 (1988).
¶ 54 It was not until after Blakely was decided that we concluded, although under Washington law omissions or misstatements relieving the State of its burden to prove every element beyond a reasonable doubt are subject to harmless error, the same errors as to aggravating factors are structural under Apprendi. State v. Thomas, 150 Wash.2d 821, 844, 849, 83 P.3d 970 (2004). Our reasoning relied heavily upon the United States Supreme Court's analysis in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Hughes, 154 Wash.2d at 143-45, 110 P.3d 192. In Sullivan, the Court held failure to give any reasonable doubt instruction was structural because its "precise effects are unmeasurable," and because without a reasonable doubt instruction "a criminal trial cannot reliably serve its function." Sullivan, 508 U.S. at 281, 113 S.Ct. 2078 (citing Rose, 478 U.S. at 577, 106 S.Ct. 3101). We held a Blakely error to be analogous to the failure to give any reasonable doubt instruction because, as in Sullivan, there is no object upon which to apply a harmless error analysis.[7]Hughes, 154 Wash.2d at 148, 110 P.3d 192. The United States Supreme Court rejected this analysis in Recuenco II and held Blakely errors are subject to harmless error analysis and are not structural. Recuenco II, 548 U.S. at 220, 126 S.Ct. 2546.
¶ 55 Now that the Court has held harmless error does apply under a Sixth Amendment analysis, we are free to return to our previous state law approach to sentencing enhancement errors. An analysis of our constitutional history and subsequent case law indicates a harmless error analysis is consistent with our state jury trial right. In addition, the same justification for making structural errors reversible per se does not apply to errors in sentencing enhancement instructions or special verdicts. Those errors are unlike a structural error whose "`"consequences... are necessarily unquantifiable and indeterminate."'" Frost, 160 Wash.2d at 780, 161 P.3d 361 (alteration in original) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (quoting Sullivan, 508 U.S. at 282, 113 S.Ct. 2078)).
¶ 56 An erroneous special verdict form or instructional error is an error in the trial process itself. Its effects can be seen and quantified just as were the effects of the errors in Tongate. This is easily seen by comparing its effects to that of other instructional errors. In Brown, the trial court erroneously instructed the jury that an accomplice must have knowledge that his actions would facilitate "a crime" rather than "the crime." 147 Wash.2d at 337-38, 58 P.3d 889. The error created an incomplete verdict because it was unclear whether the jury found *928 the defendants guilty as accomplices in the charged crime or some other offense. Id. at 338, 58 P.3d 889. We examined the record to determine whether "`it appear[ed] "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."'" Id. at 341, 58 P.3d 889 (quoting Neder, 527 U.S. at 15, 119 S.Ct. 1827 (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967))). Where it was clear the defendant acted as principal in the crime charged, we held the instructional error was harmless beyond a reasonable doubt, but where the record disclosed no evidence of direct participation, we found the error was not harmless because the factual basis for the jury's verdict was ambiguous. Id. at 341-42, 58 P.3d 889.
¶ 57 Similarly, in State v. DeRyke, 149 Wash.2d 906, 911-12, 73 P.3d 1000 (2003), the instructions left the jury's verdict incomplete because they failed to specify the degree of rape that the defendant was charged with attempting. DeRyke argued he was entitled to reversal because the jury could have convicted him based upon a finding that he intended to commit a lesser degree of rape. Id. at 912, 73 P.3d 1000. To prove attempted first degree rape, as opposed to second or third degree rape, the State was required to prove intent to commit rape by forcible compulsion. Id. at 913, 73 P.3d 1000. By failing to specify the degree of rape, the instructions could have allowed the jury to convict DeRyke without finding the requisite intent. Id. at 913-14, 73 P.3d 1000. Relying on Brown, we found the error harmless because the trial court had instructed the jury as to only one degree of rape and did not present a verdict that allowed the jury to find the defendant guilty of a lesser included offense. DeRyke, 149 Wash.2d at 914, 73 P.3d 1000. Thus, there was no opportunity for the jury to be misled by the instructional error. Id.
¶ 58 The same analysis can be applied to incomplete verdicts resulting from sentencing enhancement instructional errors or errors in special verdict forms. Unlike a structural error that infects the entire process, the effect of a failure to submit a sentencing factor to the jury can be determined by reviewing the record to determine whether the jury, beyond a reasonable doubt, would have returned the same verdict absent the error. See Fulminante, 499 U.S. at 307-08, 111 S.Ct. 1246 (concluding, "[t]he common thread connecting [harmless error] cases is that each involved `trial error'error which occurred in the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence"). There is thus no need to hold Blakely-type errors are reversible per se under a state constitutional analysis.
¶ 59 Based on our constitutional history, our subsequent case law, and the very nature of the error, I would hold the failure to submit a sentencing factor to the jury for a factual determination based upon the reasonable doubt standard is subject to a harmless error analysis under state law. In Williams-Walker, the trial court violated Williams-Walker's jury trial right under federal and state law when it imposed a firearm sentencing enhancement without a jury finding beyond a reasonable doubt that Williams-Walker or an accomplice was armed with a firearm during the commission of the robbery and murder. Just as in Brown and DeRyke, the special verdict asking the jury to indicate whether Williams-Walker was armed with a deadly weapon without requiring the jury to make a distinction between a "firearm" and a "deadly weapon other than a firearm" created an ambiguity as to the factual basis for the jury's verdict. See former RCW 9.94A.510(3), (4). I must therefore determine whether the record left no reasonable doubt that the jury based its deadly weapon verdict on a finding that Williams-Walker was armed with a firearm. See Brown, 147 Wash.2d at 342, 58 P.3d 889.

C. If a Blakely-type error is subject to harmless error analysis under state law, were the errors harmless here?
¶ 60 A constitutional error is harmless when "`it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."'" Brown, 147 Wash.2d at 341, 58 P.3d 889 (quoting Neder, 527 U.S. at 15, 119 S.Ct. 1827 (quoting Chapman, 386 U.S. at 24, 87 S.Ct. 824)). "When applied to an element omitted from, or misstated in, a jury instruction, the error is harmless if that element is supported by uncontroverted evidence." Id. *929 (citing Neder, 527 U.S. at 18, 119 S.Ct. 1827). We have held errors in jury instructions as to firearm enhancements are harmless where the record leaves no reasonable doubt as to whether the jury based its special verdict on a finding that the defendant was armed with a firearm during the commission of the crime. Claborn, 95 Wash.2d at 633, 628 P.2d 467; Hall, 95 Wash.2d at 540, 627 P.2d 101.
¶ 61 The circumstances in Williams-Walker indicate that if there was a jury trial violation at sentencing, it was clearly harmless. The State charged Williams-Walker with being armed with a firearm during the commission of first degree robbery and felony murder. The only weapon of any kind at issue was a firearm. No other weapon was involved. The State provided evidence that a firearm was used during the commission of the robbery and homicide by presenting the bullet recovered from the body of Gene Chamberlin and the casing recovered from the scene, photographs of the entry wound and the bullet lodged in Chamberlin's body,.22 caliber cartridges recovered from inside Williams-Walker's apartment, testimony by eyewitnesses to the shooting, and testimony from Carlos Fuentes claiming that he was armed with a .22 caliber pistol and shot Chamberlin. Williams-Walker did not contest the use of a firearm. In closing, the State further emphasized the use of a firearm in the two crimes stating, "[t]he lethal force that was used in this particular case was a .22 caliber gun pointed at Gene Chamberlin from a short distance away and then fired," VIII Verbatim Report of Proceedings (Williams-Walker) at 1527, and "Chamberlin died as a result of that bullet that travelled through his ribs, through his heart and eventually rested on the other side," id. at 1529.
¶ 62 The record leaves no doubt that the jury would have returned a guilty verdict as to the special verdict if the form and instruction had correctly instructed them to determine whether Williams-Walker was armed with a firearm. As was the case in Claborn, Hall, and Taylor, there is no dispute that a gun was seen and used, that a bullet was fired into Chamberlin's body, and that no other weapons were seen or used. Under these circumstances, I have no doubt that, given an opportunity to do so, the jury would have found beyond a reasonable doubt Williams-Walker was armed with a firearm during the commission of the murder and robbery of Chamberlin. I would, therefore, hold that failure to specify a firearm in the deadly weapon special verdict form in Williams-Walker was harmless beyond a reasonable doubt.

III. CONCLUSION
¶ 63 I would affirm the Court of Appeals in Graham and Ruth, and reverse the Court of Appeals in Williams-Walker. I would hold the sentencing courts in Graham and Ruth did not violate Blakely when they imposed firearm sentencing enhancements supported by specific jury findings that Graham and Ruth were armed with firearms beyond a reasonable doubt. I would hold the sentencing court in Williams-Walker violated Blakely by imposing a firearm sentencing enhancement that was not supported by a specific jury finding that Williams-Walker was armed with a firearm beyond a reasonable doubt, but that the error was harmless.
WE CONCUR: JAMES M. JOHNSON and TOM CHAMBERS, JJ.
NOTES
[1] Karol testified she saw Williams-Walker shoot Chamberlin. But Hardin testified Fuentes was the shooter.
[2] Consequently, here, it is unnecessary to engage in a full Gunwall analysis, as Ruth argued, to determine whether a claim under article I, section 21 warrants an inquiry on independent state grounds. State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986). See McNabb v. Dep't of Corrections, 163 Wash.2d 393, 399-400, 180 P.3d 1257 (2008); see also State v. Recuenco, 163 Wash.2d 428, 440, 180 P.3d 1276 (2008) (Recuenco III) (discussing the greater protection for a defendant's right to a jury under our state constitution).
[3] Former RCW 9.94A.510(3) stated the following:

The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements. . . .
(a) Five years for any felony defined under any law as a class A felony. . . .
[4] Former RCW 9.94A.510(4) stated:

The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a deadly weapon other than a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any deadly weapon enhancements. . . .
(a) Two years for any felony defined under any law as a class A felony. . . .
[5] Though former RCW 9.94A.510(4) by its plain language appears to apply only to deadly weapons other than firearms, our cases demonstrate that a defendant may in fact be given a deadly weapon enhancement for use of a firearm. See, e.g., Recuenco III, 163 Wash.2d at 431-32, 180 P.3d 1276.
[6] Former RCW 9.94A.602 stated:

In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, . . . if a jury trial is had, the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime.
For purposes of this section, a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: . . . pistol, revolver, or any other firearm. . . .
[7] The State also relied on State v. Pharr for the proposition that underlying crimes necessarily establishing the use of a firearm support imposing a firearm enhancement when only a deadly weapon enhancement is authorized by the jury. See 131 Wash.App. 119, 126 P.3d 66 (2006). In that case, the Court of Appeals found no error because the trial court instructed the jury to answer the deadly weapon special verdict form in the affirmative if it found Pharr had been armed with a firearm when he committed the crime. To the extent Pharr is inconsistent with this opinion, we disapprove of Pharr.
[8] In contrast, the convict and special verdict instructions in Williams-Walker, 2006 WL 701942, did not require the jury to find Williams-Walker had been armed with a firearm. Because our holding requires the jury to authorize a firearm enhancement by special verdict, the lack of a firearm element in the underlying offense in that case is not relevant here.
[1] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[2] The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime. . . .

(a) Five years for any felony defined under any law as a class A felony or with a statutory maximum sentence of at least twenty years, or both. . . .
Former RCW 9.94A.510(3).
[3] The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a deadly weapon other than a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any deadly weapon enhancements based on the classification of the completed felony crime. . . .

(a) Two years for any felony defined under any law as a class A felony or with a statutory maximum sentence of at least twenty years, or both. . . .
Former RCW 9.94A.510(4).
[4] In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime.

For purposes of this section, a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: ... pistol, revolver, or any other firearm.
Former RCW 9.94A.602 (alteration in original).
[5] In State v. Recuenco, 163 Wash.2d 428, 438, 180 P.3d 1276 (2008) (Recuenco III), we misspoke when we said that the hard time for armed crime act of 1995 "removed `firearm' from the definition of `deadly weapon.'" All the act did was split the deadly weapon enhancement into a "firearm" enhancement and a "deadly weapon other than a firearm" enhancement. Laws of 1995, ch. 129, § 2. The fact that "deadly weapon" continues to include firearm is confirmed by the language "deadly weapon other than a firearm." Former RCW 9.94A.510(4) (emphasis added).
[6] Conversely, there is nothing in the statute prohibiting a special verdict from specifying the type of weapon used. See former RCW 9.94A.602. Therefore, a special verdict may specify that the weapon used was a firearm. See Recuenco III, 163 Wash.2d at 439, 180 P.3d 1276.
[7] In Neder, the Court disapproved of the analysis in Sullivan, holding an absence of a complete verdict does not mean there is no object upon which to apply a harmless error analysis. 527 U.S. at 12, 119 S.Ct. 1827. We recognized and adopted the Court's limitation of Sullivan in Frost.